UNITED·STATES *v.* OREGON AND CALIFORNIA RAILROAD COMPANY.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 318.   Argued November 12, 1896. — Decided December 14, 1896.

The grant of public land made to the Oregon Central Railroad Company by the act of May 4, 1870, c. 69, 16 Stat. 94, "for the purpose of aiding in the construction of a railroad and telegraph line from Portland to Astoria and from a suitable point of junction near Forest Grove to the Yamhill River near McMinnville in the State of Oregon" contemplated a main line from Portland to Astoria opening up to settlement unoccupied and inaccessible territory and establishing railroad communication between· the two termini, and also the construction of a branch road from Forrestville to McMinnville, twenty-one miles in length, running through the heart of the Willamette Valley, and it devoted the lands north of the junction, not absorbed by the road from Portland to that point, to the building of the road to the north.

The construction of the branch road, though included in the act, was subordinate and subsidiary, and this court cannot assume that if the promoters had sought aid merely for the subordinate road, their application would have been granted.

The facts that the act·of 1870 grants land for the purpose of aiding in the construction of a railroad — in the singular number — and that the act of January 31, 1885, c. 46, 23 Stat. 296, does the same, do not affect these conclusions.

THIS was a bill brought by the United States against the Oregon Central Railroad Company and the Oregon and California Railroad Company, in the Circuit Court of the United States for the District of Oregon, to quiet title to about ninety thousand acres of land in the State of Oregon; .and a cross bill filed by the defendants to quiet title to the same land in the Oregon

and California Railroad Company.  The cause was heard on the pleadings and a stipulation as to the facts with accompanying maps and documents.

On May 4, 1870, an act of Congress was approved, (16 Stat. 94,) which is as follows:

" CHAP. LXIX. — An act granting lands to aid in the construction of a railroad and telegraph line from Portland to Astoria and McMinville,[1] in the State of Oregon.

"*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That for the purpose of aiding in the construction of a railroad and telegraph line from Portland to Astoria, and from a suitable point of junction near Forest Grove to the Yamhill River, near McMinville, in the State of Oregon, there is hereby granted to the Oregon Central Railroad Company, now engaged in constructing the said road, and to their successors and assigns, the right of way through the public lands of the width of one hundred feet on each side of said road, and the right to take from the adjacent public lands materials for constructing said road, and also the necessary lands for depots, stations, side tracks and other needful uses in operating the road, not exceeding forty acres at any one place; and, also, each alternate section of the public lands, not mineral, excepting coal or iron lands, designated by odd numbers nearest to said road, to the amount of ten such alternate sections per mile, on each side thereof, not otherwise disposed of or reserved or held by valid preëmption or homestead right at the time of the passage of this act.  And in case the quantity of ten full sections per mile cannot be found on each side of said road, within the said limits of twenty miles, other lands designated as aforesaid shall be selected under the direction of the Secretary of the Interior on either side of any part of said road nearest to and not more than twenty-five miles from the track of said road to make up such deficiency.

" SEC. 2.  *And be it further enacted,* That the Commissioner of the General Land Office shall cause the lands along the line

---

[1] In this act McMinnville is spelled with one " n."

of the said railroad to be surveyed with all convenient speed. And whenever and as often as the said company shall file with the Secretary of the Interior maps of the survey and location of twenty or more miles of said road, the said Secretary shall cause the said granted lands adjacent to and coterminous with such located sections of road to be segregated from the public lands; and thereafter the remaining public lands, subject to sale within the limits of the said grant, shall be disposed of only to actual settlers at double the minimum price for such lands: *And provided also,* That settlers under the provisions of the homestead act who comply with the terms and requirements of said act, shall be entitled, within the said limits of twenty miles, to patents for an amount not exceeding eighty acres each of the said ungranted lands, anything in this act to the contrary notwithstanding.

" Sec. 3. *And be it further enacted,* That whenever and as often as the said company shall complete and equip twenty or more consecutive miles of the said railroad and telegraph, the Secretary of the Interior shall cause the same to be examined, at the expense of the company, by three commissioners appointed by him ; and if they shall report that such completed section is a first-class railroad and telegraph, properly equipped and ready for use, he shall cause patents to be issued to the company for so much of the said granted lands as shall be adjacent to and coterminous with the said *complected* [completed] sections.

" Sec. 4. *And be it further enacted,* That the said alternate sections of land granted by this act, excepting only such as are necessary for the company to reserve for depots, stations, side tracks, wood yards, standing ground and other needful uses in operating the road, shall be sold by the company only to actual settlers, in quantities not exceeding one hundred and sixty acres or a quarter section to any one settler, and at prices not exceeding two dollars and fifty cents per acre.

" Sec. 5. *And be it further enacted,* That the said company shall, by mortgage or deed of trust to two or more trustees, appropriate and set apart all the net proceeds of the sales of the said granted lands, as a sinking fund, to be kept invested

in the bonds of the United States, or other safe and more productive securities, for the purchase from time to time, and the redemption at maturity, of the first mortgage construction bonds of the company, on the road, depots, stations, side tracks and wood yards, not exceeding thirty thousand dollars per mile of road, payable in gold coin not longer than thirty years from date, with interest payable semi-annually in coin not exceeding the [rate] of seven per centum per annum; and no part of the principal or interest of the said fund shall be applied to any other use until all the said bonds shall have been purchased or redeemed and cancelled; and each of the said first mortgage bonds shall bear the certificate of the trustees, setting forth the manner in which the same is secured and its payment provided for. And the District Court of the United States, concurrently with the state courts, shall have original jurisdiction, subject to appeal and writ of error, to enforce the provisions of this section.

"SEC. 6. *And be it further enacted*, That the said company shall file with the Secretary of the Interior its assent to this act within one year from the time of its passage; and the foregoing grant is upon condition that said company shall complete a section of twenty or more miles of said railroad and telegraph within two years, and the entire railroad and telegraph within six years, from the same date."

Within one year from the passage of this act, the Oregon Central Railroad Company filed with the Secretary of the Interior its assent to the act, and prior to July 31, 1871, and February 2, 1872, filed in that department maps of survey and definite location of its line of railroad, being a location from Portland to the Yamhill River near McMinnville *via* a point near Forest Grove, and from that point to Castor Creek, a point twenty miles toward Astoria; and from Castor Creek to Astoria; the distances being about twenty-six miles from Portland to Forest Grove; about twenty-two and three fourths miles from there to the Yamhill River; and about one hundred and two and a half miles from Forest Grove to Astoria. The lands adjacent to and coterminous with the entire line of definite location were segregated and withdrawn from the pub-

lic lands. Twenty miles of road from Portland, running due west and terminating at a point near the town of Hillsboro, in Washington County, Oregon, were constructed, and about six miles more to a point near Forest Grove; and from that point something over twenty-one miles running almost directly south to a point near McMinnville in Yamhill County. The line was constructed on a curve as it approached Forest Grove.

The Secretary of the Interior on February 16, 1872, accepted the first twenty miles as completed under the act, and on June 23, 1876, he accepted another twenty-seven and one half miles as so completed, being the distance from Hillsboro to a point near Forest Grove, and from that point to McMinnville.

On October 6, 1880, the Oregon Central Railroad Company, for value, sold and conveyed to the Oregon and California Railroad Company all the title and interest which it had acquired in and to the lands granted under the act, and all its road, franchises and privileges; but it was not admitted by the United States that the Oregon Central Railroad Company had a legal right to make said sale and conveyance. On that day the Oregon Central Railroad Company was insolvent and went into liquidation, and the conveyance was made to settle its business and dispose of its property. Neither of these railroad companies nor any one else has ever constructed or equipped any portion or part of any railroad from the point near Forest Grove to Astoria.

January 31, 1885, Congress passed an act, 23 Stat. 296, c. 46, the first section of which is as follows:

"That so much of the lands granted by an act of Congress entitled 'An act granting land to aid in the construction of a railroad and telegraph line from Portland to Astoria and McMinnville, in the State of Oregon,' approved May fourth, eighteen hundred and seventy, as are adjacent to and coterminous with the uncompleted portions of said road, and not embraced within the limits of said grant for the completed portions of said road, be, and the same are hereby, declared to be forfeited to the United States and restored to the public domain, and made subject to disposal under the general land laws of the United States as though said grant had never been made."

July 8, 1885, the Commissioner of the General Land Office issued to the local land office at Oregon City instructions for its guidance under the act of January 31, 1885, and a diagram showing the limits of the forfeited lands and that portion of the grant which was not affected by the act. 4 Land Dec. 15. These instructions were approved by the Acting Secretary of the Interior. The diagram showed that the road ran from Portland west to a point near Forest Grove where it turned almost at a right angle and ran south to McMinnville. From that point two lines were drawn, one due north and the other due west, both terminating at the twenty mile limits. The granted lands lying within the quadrant formed by these lines and the twenty mile limits, and also the indemnity lands within said lines and the twenty-five mile limits, were designated on the diagram as "forfeited." The forfeited lands on the line from Forest Grove to Astoria were also shown.

In November, 1885, the Oregon and California Railroad Company, assignee of the Oregon Central Railroad Company, presented to the land office a list of lands embraced within the territory claimed in this suit to be forfeited to the United States, and tendered the fees for locating the same, which were declined and the list rejected upon the ground that the lands had been forfeited.

About the same time there was filed in the land department a petition of the receiver of the Oregon and California Railroad Company, praying that the instructions in so far as they applied to the granted lands in said quadrant be revoked. This petition was referred to the Commissioner for examination and report, and a report was subsequently submitted recommending "that the restoration remain in force as per instructions of July 8, 1885," and transmitting a second diagram, "showing the accurate limits of the grant." On April 5, 1887, the Secretary of the Interior passed upon the matter of the application of the receiver and held that the road from Portland to Forest Grove, and from the latter point to Mc-Minnville, was to be treated as two distinct roads, the limits of which should be adjusted separately. 5 Land Dec. 549. By that adjustment the quadrant northwest from Forest Grove

fell within the lands forfeited, which was in accordance with the restoration of July 8, 1885.

Some of the lands claimed to have been forfeited to the United States have been patented and are in the actual occupation of the patentees or persons claiming under them, and other portions of said lands for which patents have been issued are unoccupied and are wild lands, as is true of some of the lands claimed by the United States, which have not been sold or patented, and are not in the actual physical possession of any person or party.

The following is a sufficient reproduction of the diagram:

The Circuit Court, Bellinger, J., held that the lands within the quadrant were included within the lands forfeited to the government, and decreed accordingly. 57 Fed. Rep. 426. The Circuit Court of Appeals for the Ninth Circuit reversed this decree and directed a decree in favor of the Oregon and California Railroad Company. 29 U. S. App. 497. Thereupon the present appeal was prosecuted.

*Mr. Assistant Attorney General Dickinson* and *Mr. George H. Williams* for appellants.

*Mr. J. Hubley Ashton* and *Mr. Joseph H. Choate* (with whom were *Mr. Charles H. Tweed* and *Mr. William F. Herrin* on the brief), for appellees.

I. The act of May 4, 1870, made a grant *in præsenti* to the Oregon Central Railroad Company, "and to their successors and assigns," of alternate sections of the public lands to the amount of ten sections per mile "on each side," of the road, providing for indemnity within an additional five miles, or within twenty-five miles "from the track of said road," with the right on the part of the company to locate its road in sections of twenty or more miles, and to construct its road in like sections, and thereupon receive patents for so much of the granted lands as should be "adjacent to and coterminous with the said completed sections." *Schulenberg* v. *Harriman*, 21 Wall. 44; *Wisconsin Central Railroad* v. *Price County*, 133 U. S. 496; *Deseret Salt Co.* v. *Tarpey*, 142 U. S. 241; *Bybee* v. *Oregon & California Railroad*, 139 U. S. 663; *Lake Superior &c. Co.* v. *Cunningham*, 155 U. S. 354.

II. The Secretary of the Interior, in executing the act of May 4, 1870, construed the act as a grant providing for the construction of one railroad from Portland to Astoria and McMinnville, and providing for the continuity of the line and the corresponding continuity of the grant from Portland to McMinnville, and not as a grant for two different and distinct railroads, one from Portland to Astoria, and the other from a junction point near Forest Grove to McMinnville.

This original and contemporaneous construction of the granting act by the department charged by law with the execution of the act remained unchanged for fifteen years in that department.

III. Agreeably to the settled doctrine of this court, the contemporaneous construction and effect given by the Department of the Interior to the granting act of May 4, 1870, as above stated, if not decisive, is entitled to very great weight, and should not be disregarded except for some strenuous reasons. *United States* v. *Union Pacific Railway*, 148 U. S. 562; *United States* v. *Johnston*, 124 U. S. 236; *Merritt* v. *Cameron*, 137 U. S. 542; *United States* v. *Alabama Southern Railway*, 142 U. S. 621.

The contemporaneous decision of the Secretary of the Interior in and in respect to those matters had by law the force and effect of a final and conclusive adjudication, and was binding as authority upon his successors and upon the Executive Department of the government. The rights of the grantee, in the act, as vested under that determination, could not be impaired or affected except by a proceeding directly taken for that purpose. *Noble* v. *Union River Logging Railroad*, 147 U. S. 165; *United States* v. *Bank of the Metropolis*, 15 Pet. 377; *Kendall* v. *Stokes*, 3 How. 87; *Lamborn* v. *County Commissioners*, 97 U. S. 181, 185.

IV. The act of forfeiture of January 31, 1885, must be regarded as a legislative interpretation of the granting act, involving an understanding by Congress that the granting act provided for one railroad and telegraph line, beginning at Portland, and having termini respectively at Astoria and McMinnville.

The language of the forfeiting act of 1885 is as follows:

"That so much of the lands granted by an act of Congress entitled 'An act granting land to aid in the construction of a railroad and telegraph line from Portland to Astoria and McMinnville, in the State of Oregon,' approved May 4, 1870, as are adjacent to and coterminous with the uncompleted portions of said road, and not embraced within the limits of said grant for the completed portions of said road, be, and

the same are hereby, declared to be forfeited to the United States."

It will be perceived that for its description, and its sole description, of the railroad and telegraph line provided for by the granting act, the forfeiting act refers to the title of the granting act, which is recited in the forfeiting act and describes the railroad and telegraph line, contemplated by the granting act, as "a railroad and telegraph line from Portland to Astoria and McMinnville."

Throughout the body of the forfeiting act, the road thus described is referred to only as "said road," showing distinctly that Congress, when it passed the forfeiting act, understood that the road which the granting act had in view was one road from Portland to Astoria and McMinnville, as expressed in the title of that act.

Congress in 1885 thus affirmed the construction of the granting act upon which the Department of the Interior had proceeded and acted in executing the provisions of that act, and expressed its understanding that such executive construction of the granting act conformed to its intention when it passed that act.

If the effect we have thus attributed to the act of 1885, as a legislative interpretation of the act of 1870, involving an understanding by Congress that the act of 1870 had in view one railroad from Portland to McMinnville, be the correct legal effect of the act of 1885, the question of the construction to be given to the act of 1870 in respect of the point here in controversy, is removed from the region of legal doubt or contestation.

V. The contemporaneous construction of the act of 1870 by the Department of the Interior, in execution of it, and the legislative interpretation of the act by Congress in 1885, were plainly correct. The provisions of the act of 1870 show clearly that Congress intended to make one grant to one company for one railroad and telegraph line "from Portland to Astoria and McMinnville," as expressed in the title of the act, and declared in the act of forfeiture of 1885.

The one railroad described in the act was to run from Port-

land, as its initial point, to Astoria and to the Yamhill River, near McMinnville, and it was to run through a point of junction near Forest Grove; showing that what the act contemplated was a union of the tracks of this one railroad from Portland to Astoria and to the Yamhill River, near McMinnville, at a suitable point of junction near Forest Grove, one line of tracks proceeding to Astoria and another line of tracks proceeding to the Yamhill River, near McMinnville.

The road from Portland was to be bifurcated, so to speak, at a suitable point of junction near Forest Grove, and to run to Astoria and to McMinnville, thus affording communication by railroad from Portland to Astoria and McMinnville.

It is conceded that the maintenance of any other view of the meaning and intent of the act involves and requires the insertion of the words, "a railroad and telegraph line," before the words, "from a suitable point of junction near Forest Grove," etc., in the first section, so as to make the section read: "That for the purpose of aiding in the construction of a railroad and telegraph from Portland to Astoria, and [a railroad and telegraph line] from a suitable point of junction near Forest Grove to the Yamhill River, near McMinnville, in the State of Oregon, there is hereby granted," etc.

But the words referred to cannot be inserted into the statute agreeably to the settled doctrine of this court. *Leavenworth, Lawrence &c. Railroad* v. *United States*, 92 U. S. 733; *Newhall* v. *Sanger*, 92 U. S. 761, and if it can be said that the words of the statute admit of any reasonable doubt as to their meaning or application, it is clearly proper that the title of the act be considered in determining the intent of Congress, agreeably to the principle so recently stated by this court in the case of *Holy Trinity Church* v. *United States*, 143 U. S. 457.

VI. It thus appears that the so-called quadrant lands in question were fully earned by the Oregon Central Railroad Company under the terms of the grant by the completion and acceptance of the second constructed section of its road from the twenty mile post, near Hillsboro, to McMinnville, as lands within the limits of the grant adjacent to and coterminous with that section.

Mr. Chief Justice Fuller, after stating the case, delivered the opinion of the court.

If the act of May 4, 1870, should be held to have authorized the construction of a main road from Portland to Astoria, and that the lands adjacent to, and coterminous with, such main road, on both sides, were granted in order to accomplish that purpose; and also to have authorized the construction of a branch from the main line, at a junction near Forest Grove, to McMinnville, then it would follow that all of the lands available on both sides as far as Forest Grove, and to an extent of twenty miles on each side, would be absorbed in aiding to build the main line; and so of the lands along the main line from Forest Grove to Astoria. And inasmuch as the line from Forest Grove to Astoria, and from Forest Grove, at the junction with the main line, south toward McMinnville, was, in its general bearing, at right angles to the main line from Portland to Forest Grove, the line from Portland to Forest Grove would absorb nearly all of the lands lying east of the branch line to McMinnville, and a part of the lands lying east of the line from McMinnville through Forest Grove, the point of junction, northwards toward Astoria. Hence but little could be earned for building the branch line except the lands lying west of it and south of the point of junction at Forest Grove, and none of the land lying north of a line drawn from Portland through Forest Grove could be held to have been within the contemplation of the act as donated for the purpose of building a branch road from the junction to McMinnville.

In this aspect, as no road was built from Forest Grove toward Astoria, substantially all that was earned was the land lying within the twenty mile limits on each side of the main road from Portland to Forest Grove, and the land lying west of the McMinnville branch and south of a line drawn from Portland through Forest Grove; and all of the lands lying in the quadrant north and west of Forest Grove were unearned lands, and forfeited under the act of January 31, 1885. These lands "are adjacent to and coterminous with the uncompleted portions of said road, and not embraced within the limits of

said grant for the completed portions of said road." But although a part of the lands lying east of this quadrant "are adjacent to and coterminous with the uncompleted portions of said road," yet they are "embraced within said grant for the completed portions of said road," for they lie within the twenty mile limits of the completed portion from Portland to Forest Grove.

The railroad companies contend that no such thing as a branch road or a junction in the ordinary sense of the word was contemplated, and that, having a right to build from Portland to Astoria, and "from a suitable point of junction near Forest Grove to the Yamhill River near McMinnville," they could treat the act as if it authorized the building of a continuous road from Portland via Forest Grove to McMinnville, without regard to the provisions for a road beyond Forest Grove to Astoria; and, by constructing their road with a curve at Forest Grove, could properly claim all of the lands falling within twenty miles of this circuitous route from Portland to McMinnville as intended to be granted for the construction of such a road. And, having actually so built, that they were entitled to all the lands lying within a quadrant produced by a radius reaching twenty miles from the curve.

Secretary Lamar rejected this contention and held that the act of May 4, 1870, contemplated two distinct roads, a road from Portland to Astoria, and a road from Forest Grove to McMinnville; that the words "point of junction" were to be given their usual meaning of a point where two or more roads join; that had the words of forfeiture "so much of the lands granted  .  .  .  as are adjacent to and coterminous with the uncompleted portion of said road," been unqualified, the line dividing the forfeited lands from those not forfeited would have been drawn through Forest Grove at right angles to the unconstructed road at that point and terminating at the lateral limits of the grant, but that as this would have thrown out of the grant large tracts of lands that were opposite to the constructed portions of the road, Congress qualified the words of forfeiture by adding "and not embraced within the limits

of said grant for the completed portions of said road," which saved to the grant a full complement of lands granted for every mile of road actually constructed, and the Secretary remarked that this view of the act was much strengthened " when it is observed that the lands in said quadrant lie along the uncompleted portion on both sides thereof, and could have been earned, if at all, by that line."

The rule of construction applicable to the granting act is the familiar rule that all grants of this description must be construed favorably to the government, and that nothing passes but what is conveyed in clear and explicit language. *Dubuque & Pacific Railroad* v. *Litchfield*, 23 How. 66, 88; *Leavenworth, Lawrence &c. Railroad Co.* v. *United States*, 92 U. S. 733, 740; *Slidell* v. *Grandjean*, 111 U. S. 412, 437; *Coosaw Mining Company* v. *South Carolina*, 144 U. S. 550, 562. And that the construction should be such as will effectuate the legislative intention, avoiding, if possible, an unjust or absurd conclusion, is also well settled.

In *Sioux City & St. Paul Railroad* v. *United States*, 159 U. S. 349, 360, it was said by Mr. Justice Harlan, speaking for the court: " If the terms of an act of Congress, granting public lands, 'admit of different meanings, one of extension and the other of limitation, they must be accepted in a sense favorable to the grantor. And if rights claimed under the government be set up against it, they must be so clearly defined that there can be no question of the purpose of Congress to confer them.' *Leavenworth &c. Railroad* v. *United States*, 92 U. S. 733, 740. Acts of this character must receive such construction 'as will carry out the intent of Congress, however difficult it might be to give full effect to the language used if the grants were by instruments of private conveyance.' *Winona & St. Peter Railroad* v. *Barney*, 113 U. S. 618, 625. 'Nothing is better settled,' this court has said, 'than that statutes should receive a sensible construction such as will effectuate the legislative intention, and, if possible, so as to avoid an unjust or an absurd conclusion.' *Lau Ow Bew* v. *United States*, 144 U. S. 47, 59. Giving effect to these rules of statutory interpretation, we cannot suppose that Congress

intended that the railroad company should have the benefit of more lands than it earned."

In the light of these principles we have no difficulty in arriving at the same result as that reached by the Secretary of the Interior and by the Circuit Court.

The act declares that the grant is made " for the purpose of aiding in the construction of a railroad and telegraph line from Portland to Astoria, and from a suitable point of junction near Forest Grove to the Yamhill River, near McMinnville." This does not describe a road from Portland to the Yamhill River, but a road from Portland to Astoria, and a road expressly stated to be from a point of junction near Forest Grove to the Yamhill River.

We are unable to see why any other than their usual meaning should be attributed to the words "point of junction." Junction in the ordinary acceptation as applied to railroads is the point or locality where two or more lines of railway meet. Two lines of distinct companies, or separate roads of the same company, or a main line and a branch road of the same company, may have points of union or meeting, styled junctions, but this can hardly be predicated of a single continuous road from one point to another. If the act had not used the word " junction " and had defined the line as running from Portland to Astoria, and to McMinnville *via* Forest Grove, there would be more force in the suggestion that Forest Grove was a point of bifurcation of one road rather than a point of junction of two roads, but the act was not couched in those terms, and the word " junction " cannot be rejected, or wrested from its obvious meaning.

As the road from Portland to Astoria and the road from Forest Grove to McMinnville were to be constructed by and belong to one company and together constituted a single enterprise, they were naturally spoken of as one railroad, as, in that sense, they were. But this is of no special significance in the present inquiry, which is whether, in view of the language of the act and the purposes to be accomplished, a main road and a branch road were provided for, in aid of which the lands were granted subject to the adjustment applicable to two

roads. And the general rule is that "words importing the singular number may extend and be applied to several persons. or things; words importing the plural number may include the singular," as provided in the first section of the Revised Statutes.

Nor are we impressed with the argument that the title of the act compels to another conclusion. The title is: "An act granting lands to aid in the construction of a railroad and telegraph line from Portland to Astoria and McMinnville in the State of Oregon." The text of the act is: "That for the purpose of aiding in the construction of a railroad and telegraph line from Portland to Astoria, and from a suitable point of junction near Forest Grove to the Yamhill River near McMinnville in the State of Oregon," the grant is made. Insert the comma after Astoria in the title, which appears after that word in the act (and for the purpose of arriving at the true meaning of a statute, courts read with such stops as are manifestly required, *Hammock* v. *Loan & Trust Co.*, 105 U. S. 77, 84; *United States* v. *Lacher*, 134 U. S. 624, 628), and the title is sufficiently comprehensive to fairly describe a road from Portland to Astoria, and a road to McMinnville, as the subject of the act. The title is no part of an act and cannot enlarge or confer powers, or control the words of the act unless they are doubtful or ambiguous. *United States* v. *Fisher*, 2 Cranch, 358, 386; *Yazoo & Mississippi Railroad* v. *Thomas*, 132 U. S. 174, 188. The ambiguity must be in the context and not in the title to render the latter of any avail.

And so of the title of the act of January 31, 1885. That title is: "An act to declare forfeiture of certain lands granted to aid in the construction of a railroad in Oregon," and the granting act is referred to in the text by its title. We do not regard the use of the singular number as persuasive of the intention of Congress that, in the adjustment of the grant as affected by the forfeiture, the fact that a main road and a branch road were provided for should be ignored.

It seems to us quite clear that a main road was to be built from Portland, the principal city of Oregon, situated on the

Columbia River, to Astoria, a port on the Pacific Ocean at the mouth of that river, a distance of some one hundred and twenty-eight and a half miles, being over one hundred miles beyond Forest Grove; and a branch from Forest Grove to McMinnville, a distance somewhat exceeding twenty-one miles. It is not denied that, as stated in the opinion of the Circuit Court, "four fifths of the line of road from Portland to Astoria traversed a rough and wholly unsettled district, but one known to be rich in timber, and believed to be in iron and coal, with considerable areas of agricultural land," while the twenty-one miles from Forest Grove to McMinnville ran through "the heart of the Willamette Valley and through the oldest settled portion of the country." The opening up to settlement of unoccupied and inaccessible territory and the establishment of railroad communication between Portland and Astoria by the construction of the main line were the obvious inducements to and the primary objects of the grant, and the construction of the branch, though included in the act, was subordinate and subsidiary. The line, both main and branch, was wholly within the State of Oregon, and we cannot assume that if the promoters had sought aid merely for a road running from Portland by way of Forest Grove to McMinnville, the application would have been granted.

The grant contemplated a main line which ran from Portland west to the point of junction and a branch from the point of junction nearly south, substantially at right angles, and devoted the lands north of the junction, not absorbed by the road from Portland to that point, to the building of the road to the north; and while the company was left free to construct parts of the road as might suit its convenience, its action could not change the effect of the grant or control its administration to the contrary of the manifest intention of Congress.

On the twentieth of May, A.D. 1871, a map of definite location was filed with the Secretary of the Interior, described in the certificate of the company's officers as showing "the location of the Oregon Central railroad from the city of Portland, Oregon, to the Yamhill River near McMinnville a distance of forty-seven and three fourths (47¾) miles, and also

from a junction near Forest Grove towards Astoria to a point one mile north of the summit of the range of hills dividing the Tualatin from the Nehalem Valley, a distance of 20 miles, as definitely fixed in compliance with said act of Congress."

Subsequently the company certified a map of definite location of the road between Astoria and Castor Creek (the western point in the preceding map), which was filed with the Secretary of the Interior, and transmitted by him, February 2, 1872, to the Commissioner of the General Land Office. The lands were withdrawn under both these maps.

The first section of constructed road from Portland twenty miles west to Hillsboro was accepted February 16, 1872. The second section was accepted June 23, 1876. This was a section of 27½ miles from Hillsboro *via* Forest Grove to McMinnville, constructed on a curve thus described by counsel for the railroad companies: "The line of this section of the road runs from the twentieth mile post for about two miles (for the most part upon indicated curves) to a point a little south of the Portland base line, and thence extends west about two miles — almost entirely upon a tangent until it passes Cornelius — to a point about two miles east of Forest Grove, when it begins to curve upon a radius of 8564 feet (equal to about 1.6 miles) until it reaches about a southwest by west direction, in which it runs upon a tangent 8956 feet (equal to about 1.7 miles), passing the town of Forest Grove at a distance of about one half or three quarters of a mile; from the end of this tangent it again curves until it reaches a southwesterly direction, and then proceeds on southerly by various curves to the Yamhill River."

If these maps of definite location and the construction of the road from Hillsboro to McMinnville *via* Forest Grove in the manner described are to be regarded as an attempt to make a part of the main road from Portland to Astoria and the branch a continuous and single road from Portland to McMinnville, eliminating Astoria altogether, and to entitle the company to claim all the lands within the quadrant by reason of the construction of the railroad on the above stated curve, we can only say that that attempt was unsuccessful,

and the rights of the government remained unaffected by the course pursued by the company.

It is forcibly argued that the acceptance of the completed section from Hillsboro to McMinnville amounted to a construction by the Secretary of the Interior of the granting act as providing for one continuous railroad from Portland *via* Forest Grove to McMinnville. But we cannot accede to this view. At the time of that acceptance the entire line of both main and branch roads had been definitely located and the lands withdrawn. It could not be presumed that all the lands would not be earned or that a forfeiture would be declared. Still less can it be supposed that it occurred to the Secretary that what the company was apparently doing for its own convenience was being done with the design of committing the Department to the recognition of the untenable position that the lands within the quadrant passed by virtue of the building of the road to McMinnville. This was a matter not then before the Secretary for determination, and when it did arise was otherwise disposed of.

And this is true as respects the approval of the first map of definite location. Such approval was *diverso intuitu* and should be given no effect as contemporaneous construction. Under that location lands were withdrawn from Portland to Castor Creek, as well as to McMinnville, and the overlap at the east of the road to McMinnville was inevitable and was not a loss to be made up from lands belonging to other parts of the grant.

In the view we take of the grant the termini of the main road were Portland and Astoria, and of the branch, the junction and McMinnville. Lands lying north of a line drawn at right angles with the branch at its northern terminus were not within the grant made in aid of the branch. Lands lying west of a line drawn at right angles with the main road at the junction were not within the grant for the main road east thereof.

As heretofore remarked, however, some of the lands lying east of the quadrant were not only coterminous with the uncompleted portion of the main road beyond Forest Grove, but

were embraced within the limits of the completed road from Portland to the junction, and, therefore, Congress, in the act of forfeiture, was careful to save those lands from its operation. There is nothing in the language used from which it can properly be concluded that Congress intended to accept the theory of the railroad companies that the circuitous route adopted in construction entitled them to the lands in the quadrant because thereby brought within the grant, or to do anything more than so qualify the phraseology as to prevent an unintended forfeiture. So far as the act operated as a legislative interpretation, it was in harmony with the granting act as subsequently construed by Secretary Lamar, and cannot be treated as proceeding on the theory of prior construction which we do not agree had been had. And although the failure of the company to build beyond Forest Grove towards Astoria left but one road, and that from Portland to McMinnville, it would be quite inadmissible to make the defeat of the primary object of Congress the basis of imputing to that body the intention of narrowing the forfeiture declared for noncompliance with the conditions imposed.

In *United States* v. *Union Pacific Railway,* 148 U. S. 562, the question before us was not presented. The decision there was controlled by the determination that the whole line was a continuous main line and that the grant was not cut in two by one company being authorized to contract with another for the construction of part of the line and a proportionate share of the grant. The whole line was built. Here the grant for building the line from Portland beyond Forest Grove to Astoria became fixed by the location of the road as did the grant in aid of the road from the junction to McMinnville. The main line was not constructed beyond the junction. The lands in controversy were not adjacent to nor coterminous with the branch road between lines drawn perpendicularly to its termini; were not coterminous with the road from Portland to the junction; and were donated to build the portion of the main line which was abandoned. The ruling in the former case has no decisive bearing under the facts in this.

*The decree of the Circuit Court of Appeals is reversed; the decree of the Circuit Court is affirmed, and the cause remanded to that court accordingly.*

MR. JUSTICE FIELD and MR. JUSTICE SHIRAS dissented.