UNITED STATES v. NORTHERN PAC. RY. CO. et al.

(Circuit Court, D. Montana. April 3, 1909.)

No. 870.

1. MINES AND MINERALS (§ 9*)—PUBLIC "MINERAL LANDS"—COAL LANDS.
   Coal lands are "mineral lands" within the meaning of that term as generally employed in the laws regulating the disposal of the public domain.

   [Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. § 9.*

   For other definitions, see Words and Phrases, vol. 5, pp. 4515–4516.]

2. PUBLIC LANDS (§ 81*)—RAILROAD GRANTS—CONSTRUCTION.
   An act of Congress giving a railroad company to which a grant of public lands has been made and patented, on the relinquishment of such of the lands as lay within a forest reservation, the right to select other public lands in lieu thereof, is to be construed in accordance with the rules governing grants, by which nothing passes by implication, and, unless the words used are clear and explicit as to the lands subject to selection, that construction should be adopted most favorable to the government.

   [Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 81.*]

3. PUBLIC LANDS (§ 81*)—RAILROAD GRANT—SELECTIONS IN LIEU OF LAND IN RESERVATION—CONSTRUCTION OF STATUTE.
   Act March 2, 1899, c. 377, § 3, 30 Stat. 994, which gives the Northern Pacific Railroad Company, on its conveyance to the United States of its lands previously granted and patented to it lying within the Mt. Ranier National Park and the Pacific Forest Reserve, the right to select in lieu thereof in any state through which its road runs "an equal quantity of nonmineral public lands, so classified as nonmineral at the time of actual government survey," must be construed, in harmony with the general policy of the government in making railroad grants, to limit the same strictly to nonmineral lands, and the railroad company is not authorized thereby to select lands which are not actually nonmineral, even though they may have been erroneously so classified when surveyed.

   [Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 81.*]

Chas. J. Bonaparte, Atty. Gen., Jas. W. Freeman, U. S. Atty., M. C. Burch, Frank Hall, Fred A. Maynard, and Walsh & Nolan, for the United States.

C. W. Bunn, Chas. Donnelly, J. G. Brown, R. F. Gaines, and Wm. Wallace, Jr., for defendants.

HUNT, District Judge. This is a suit brought by the United States against defendants to have a certain patent for coal lands in Montana, issued to the Northern Pacific Railway Company, adjudged null and void. The lands were selected in December, 1899, by the defendant Northern Pacific Railway Company, in lieu of certain lands conveyed by it to the United States, under the provisions of Act Cong. March 2, 1899, c. 377, 30 Stat. 993, entitled "An act to set aside a portion of certain lands in the state of Washington, now known as the Pacific Forest Reserve, as a public park, to be known as the Mount Ranier National Park." Section 1 of the act sets apart the particular lands which Congress desired to include within a park for the benefit and enjoyment of the people. Section 2 places the park under the exclusive

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

control of the Secretary of the Interior, and authorizes him to make regulations for the management of the park, and the construction of roads therein, and to make provision against the destruction of fish and game. Section 3 reads as follows:

"That upon execution and filing with the Secretary of the Interior, by the Northern Pacific Railroad Company of proper deed releasing and conveying to the United States the land in the reservation hereby created, also the lands in the Pacific Forest Reserve which have been heretofore granted by the United States to said company, whether surveyed or unsurveyed, and which lie opposite said company's constructed road, said company is hereby authorized to select an equal quantity of nonmineral public lands, so classified as nonmineral at the time of actual government survey, which has been or shall be made, of the United States not reserved and to which no adverse right or claim shall have attached or have been initiated at the time of the making of such selection, lying within any state into or through which the railroad of said Northern Pacific Railroad Company runs, to the extent of the lands so relinquished and released to the United States. * * * "

Section 4 of the act provides that upon the filing by the railroad at the local land office of the land district in which any tract of land has been selected, and the payment of fees, and after the approval of the Secretary of the Interior, patents of the United States conveying to the railroad company the lands so selected shall be issued. In case the tract so selected shall be at the time of the selection unsurveyed, the list filed by the railroad company at the local land office shall describe the tract so as to designate it with reasonable certainty; and, within three months after the lands including such tract shall have been surveyed and the plats filed by the local land office, a new selection list shall be filed by the company describing the tract according to the survey. Section 5 provides that the mineral land laws of the United States are extended to the lands lying within the reserve and park.

The cause was heard on bill and answer. The facts are that the lands in controversy were surveyed several years before the selection, and were classified as nonmineral at the time of actual government survey. The fact that they contained coal deposits of more or less value was known to the railway company at the time of selection. On August 17, 1903, patent to the lands was issued to the Northern Pacific, which thereafter conveyed certain parcels thereof to the defendants Rocky Fork Coal Company of Montana and Northwestern Improvement Company, neither of which defendants acquired any higher rights to the lands in question than the Northern Pacific Railway acquired.

The question presented involves the proper construction of section 3 of the statute referred to. If counsel for the government are correct, we must read the law as if it in effect contained the copulative "and," so as to make the authority of the railroad company one "to select an equal quantity of nonmineral public lands and so classified as nonmineral at the time of actual government survey," etc.; while if the contention of counsel for the defendants is acceptable, then the words "nonmineral public lands, so classified as nonmineral at the time of actual government survey," etc., indicate definitely what lands were available to the railway company in lieu of those relinquished, and were used by Congress to give certainty and security to the selections made, by definitely fixing what lands could be selected, irrespective

of the actual character of the land. The Department of the Interior, upon presentation of the question involved, decided that the railroad company was entitled to select the lands in controversy, and accordingly, in August, 1903, patent was issued. Davenport v. Northern Pacific Railway Co., 32 Land. Dec. Dep. Int. 28. To adopt the construction asked for by the government is not wholly satisfactory, in that it calls for the practical insertion of the conjunctive into the text; while to adopt the defendants' view seems unsound, because it ignores the full significance of the words "nonmineral public lands," as found in the sentence, which gives to the railroad company general authority to select.

We must, therefore, regard the case as one where the letter of the law has failed to convey a clear meaning; hence we are at liberty to turn to some general rules which will aid in solving the doubtfulness. By doing this, we may ascertain some points of superior strength, upon which the judgment of the court should rest, subject to review by the learned judges of higher tribunals.

It is proper to consider that the general policy of Congress has been to reserve mineral lands from grants made of public lands; and that coal lands are mineral within the meaning of that term, as generally employed in the laws regulating disposal of the public domain, has also been decided. Mullan v. United States, 118 U. S. 271, 6 Sup. Ct. 1041, 30 L. Ed. 170; Northern Pacific Railway v. Soderberg, 188 U. S. 526, 23 Sup. Ct. 365, 47 L. Ed. 575. The special express provisions made in certain acts of Congress, of which the original act making grant to the Northern Pacific Railroad was one, to aid in the construction of railways, to the effect that coal and iron lands shall not be deemed mineral within the provisions of such acts, emphasize the point that such lands would be included as mineral, unless specially excluded. Barden v. Northern Pacific Railroad, 154 U. S. 288, 14 Sup. Ct. 1030, 38 L. Ed. 992. Undoubtedly, the lands to be taken under the act in question are such as the definitions of Congress and the decisions of the Supreme Court have attached to the word "mineral" since 1864. Northern Pacific Railway Company v. Soderberg, supra; United States v. Mullan (C. C.) 10 Fed. 785.

There is, likewise, the fundamental rule of construction of statutes that Congress is not to be presumed to have used words without a purpose; that superfluous words are not to be presumed to have been used; and that a statute must be expounded, if practicable, so as to give some effect to every word. Platt v. Union Pacific R. R. Co., 99 U. S. 48, 25 L. Ed. 424.

I am not convinced by the defendants' argument that the act of Congress under examination was "in no sense a grant," and that the usual rules of construction applicable to grants are not pertinent. True, the object of the legislation was an exchange of lands, but the lands surrendered had been vested in the railroad company under a public land grant act, and as those to be selected were also to be public lands, title to which should be vested by patent from the United States, in the absence of words clearly indicating a different intention, it is but reasonable to hold that the right of selection of the lieu land was subject to such construction as governed grants of lands at the

time of the passage of the act under which such selection might be made. Mullan v. United States, supra. The lands to be selected still retain the general character of a donation, and in selection the very valuable right has been given to the grantee to choose its lieu lands from any nonmineral public lands, when classified, lying in any state into or through which the railroad of the Northern Pacific Railway Company runs. This opportunity was doubtless regarded as a strong inducement to the railroad company. But whether we call the act one of grant or exchange, it was authority for a transfer of a nature such as to justify applying to the statute the rule of construction that nothing passes by implication, and unless the words of the grant are clear and explicit as to the land conveyed, that construction which is most favorable to the government should prevail. United States v. Oregon, etc., R. R., 164 U. S. 527, 17 Sup. Ct. 165, 41 L. Ed. 541; Leavenworth, etc., R. Co. v. United States, 92 U. S. 740, 23 L. Ed. 634.

Now, under these principles, it cannot be well held that Congress contemplated changing its policy by giving to the railroad company choice of any public lands in any of the states through which its road runs, though of a kind infinitely more valuable than the kind out of which those that were surrendered to the government by the railroad company were taken; yet defendants' argument would put gold, silver, and other precious metals all within the classes of lands from which selection might be made, provided the lands containing them had been classified as nonmineral at the time of survey.

In my judgment, the intent of Congress is best gathered by coördination of the language of the statute with relation to this general policy of the government, to the condition of the country when the act under examination was passed, and to the decisions of the Supreme Court, as referred to. Doing this, I find, not that there was an enlargement of the right of selection from classes of public lands outside of those which are reserved, but that the general authority to select "an equal quantity of nonmineral public lands" means selection from the nonmineral public lands, and only from nonmineral public lands.

The particular words following the general characterization of lands so authorized to be selected confine the right of selection to lands already classified as nonmineral, or to those which shall be so classified. Any lands selected, however, must always be of the general class, nonmineral, and must have been so classified in the past, or must be so classed in the future. That is to say, the fact of their nonmineral character must exist, and though classification is essential before the right of selection attaches, yet, if the lands are not nonmineral, the fact that they have been "so classified" does not operate as a binding determination that they were nonmineral in character, and preclude the government from asserting its right to have lands which are mineral in fact excluded from those out of which selection may be made. True character, and not classification without regard to true character, is the fundamental meaning.

I accord most respectful consideration to the views of the officers of the General Land Office of the government, and admit the force of the arguments which attach much weight to rulings made in Davenport v. Northern Pacific Railway Company, supra, and in Ward v.

St. P. & M. R. Co., decided by the commissioner on March 15, 1894, and to the fact that Congress knew the construction put upon the language of the act approved August 5, 1892, c. 382, 25 Stat. 391, providing for the relief of settlers upon lands in North and South Dakota; but I cannot yield the view already expressed of what seems to me to be the accurate construction.

The complainant is entitled to a decree.