## No. 11,228.

## DALBY v. CITY OF LONGMONT.

Decided November 1, 1926.   Opinion adhered to May 2, 1927.

Action for damages for breach of contract.   Judgment for defendant.

## *Affirmed.*

1. MUNICIPAL CORPORATIONS—*Contracts.*   Contract of a city to employ plaintiff for nontechnical work held invalid where no bids were asked for, under c. 236, S. L. '21.

### *On Rehearing.*

2. STATUTES—*Construction—Constitutional Law.*   Chapter 236, S. L. '21, refers to both first and second class cities, and is not unconstitutional because not germane to the title of the act.

3.    *Construction.*   In the construction of a statute the title is subordinate to the text.

4. MUNICIPAL CORPORATIONS—*Contracts.*   The legislature has power to regulate the manner in which a city—incorporated under the general laws—shall exercise its power to contract regarding its property, where in so doing no constitutional provision is violated.

*Error to the District Court of Boulder County, Hon. George H. Bradfield, Judge.*

Messrs. MELVILLE, MELVILLE & TEMPLE, for plaintiff in error.

Messrs. PERSHING, NYE, TALLMADGE & BOSWORTH, Mr. L. W. NEWBY, Mr. ROBERT H. DUNLAP, for defendant in error.

*En Banc.*

MR. JUSTICE DENISON delivered the opinion of the court.

DALBY was defeated on trial to the court in a suit against the city for damage for breach of contract and brings error.

The city council of defendant city passed the following resolution: "Moved, that Mr. Art Dalby be employed to superintend the finishing of the new reservoir, furnish his own machinery and tools, and that the work be carried on under the supervision of Mr. Bice, city engineer, Mr. Dalby and Mr. Shumaker, and Mr. Dalby be paid for his services and the use of his equipment the sum of $2500."

Within thirty days they rescinded this resolution. He had begun work but the city refused to pay him anything. The question before us is whether the council might rescind; i. e., whether the contract was valid. Several reasons are assigned why the contract is invalid, and, if any one is sound, the judgment was right.

One is that by S. L. 1921, c. 236, "All work done by the city in the construction of works of public improvement of every kind shall be done by contract to the lowest responsible bidder on open bids after ample advertisement; Provided, that the city shall not be required to advertise for and receive bids for such technical, professional, or incidental assistance as it may deem wise to employ in guarding the interest of the city against the neglect of contractors in the performance of such work."

No bids were taken for Dalby's contract. Finishing is part of construction. By its title this act applies to both first and second class cities. Dalby's work was not, at least was not wholly, technical or professional because he was to employ and did employ his own machinery and tools and was to be and was supervised by city officials.

It is a mistake to assert that the legislature may not thus regulate the action of the city with reference to its private property (if it is private). The power of all citizens to contract may be regulated; e. g., by the statute of frauds.

There is no escape from the conclusion that the contract was invalid for this reason; we think also for other reasons, but it is not necessary to discuss them.

Judgment affirmed.

MR. CHIEF JUSTICE ALLEN and MR. JUSTICE WHITFORD concur.

## On Rehearing.

We granted a rehearing only on the constitutionality of chapter 236, S. L. 1921, and transferred the cause to the court in banc. It has now been argued orally before the full court.

The argument was made not only on the constitutional question, but on the construction of the statute. The claim is that said chapter relates to cities of the first class only and that if it relates to those of the second class it is not within the terms of the title of the act and so is unconstitutional. We notice the arguments on the construction of the statute, though not within the terms of the rehearing, because they are so closely connected with the constitutional question.

Said chapter is an amendment of section 16 of the act of 1891 which was an amendment of the general municipal incorporation act of 1877 (Gen. Laws, pp. 874–919). We think said section 16 refers to both classes of cities, first, because its terms include both classes, and hence some good reason to exclude one class must be shown; second, because it is an act which amends that part of the general act which refers to both classes; third, many sections of the act of 1891 refer specifically to first class cities, while section 16 is one of four which do not, and the inference is that these four were intended to refer to both classes; we do not think that the maxim "noscitur a sociis" applies here, but rather that the omission of the words "first class," so carefully inserted in the other sections, shows an intent to omit them, and thus to include the second class; fourth, the reason and

purpose of the section are of equal force in either class; fifth, the argument of plaintiff in error is that the whole act of 1891 was intended to refer to the first class only, yet part of section 1 of that act specifically relates not to first class cities at all but to towns and second class cities only; sixth, the legislature thought that section 16 of the act of 1891 related to second-class cities because they entitled the act of 1921, which amended it "An act in relation to public improvements *in cities of the first and second classes,* and to amend section 6579 [i. e., said section 16], Revised Statutes of Colorado of 1908."

It may be noted also, though not of great weight as an argument, that section 15 of the act of 1891, which is in the same category as section 16, that is, it does not expressly mention cities of the first class, has been superseded, so far as such cities are concerned, by the act of 1901, now C. L. § 9015, and so is of no force, if it does not cover cities of the second class.

But the claim is that by this construction the said section 16 is not germane to the title of the act, which is "An Act to Amend an Act entitled 'An Act in Relation to Municipal Corporations,' approved April 4, 1877, and to More Particularly Define the Powers and Duties of Cities of the First Class." The construction we give it is within the scope of amendment of the act of 1877, but not within that of definition of powers or duties of cities of the first class. Plaintiff in error says that the latter is a qualification and restriction of the former. That necessitates reading the title as follows: "An Act to Amend an Act entitled 'An Act in Relation to Municipal Corporations' * * * by More Particularly Defining the Powers and Duties of Cities of the First Class." This calls upon us to reject a construction of the title which embraces the section and give it a construction which does not, in order to hold that the section is unconstitutional. We have never done that, and we do not think it right. In construction the title is subordinate to the text. *Sugar City etc., v. Crowley County,* 57 Colo.

432, 446, 140 Pac. 809; *U. S. v. Oregon etc., R. R.,* 164
U. S. 526, 541, 17 Sup. Ct. 165, 41 L. Ed. 541.

It is urged that the first sections of the act of 1891 are
more appropriately called amendments, and so should be
said to be covered by the first part of the title, and that
the remaining sections are new and are evidently in-
tended to be the more particular definition of powers and
duties of cities of the first class, covered by the last part
of the title, and so all these remaining sections should
be regarded as affecting such cities only, whether they
say so or not. This argument is not without force but
we think it is overbalanced by what we have said above.

Plaintiff in error advances the proposition that the
legislature has no constitutional right to regulate a city
as to its proprietary rights, and cannot say how it shall
make its contracts. Has it not as much power to say how
a city shall make its contracts as how a man shall make
them, yet the statutes forbid one to make certain con-
tracts and require others to be made in a prescribed way.
See statute of frauds and Code 1921, § 281.

*Holyoke v. Smith,* 75 Colo. 286, 226 Pac. 158, is cited
and it is pointed out that we there said (p. 297) that the
proprietary capacity of the city was not subject to legis-
lative control; but we were referring to the making of
rates for a municipally owned utility, and all we held
there was that the legislature could not create a special
commission, i. e. the Public Utility Commission, to regu-
late them, because of Const. art. V, sec. 35, which, we
held, expressly forbade such method of control. Surely
the legislature may put what limitations it pleases, not
forbidden by the Constitution, on a municipal corpora-
tion which itself has created. The corporation has no
power save what the legislature gives. The rights of
such a corporation bear little analogy to the ancient
rights of London and other cities mentioned in Magna
Charta. Note that we are not now speaking of a city
incorporated under the twentieth amendment.

But the claim is that because Longmont was incorporated under the act of 1877, which contained no restriction upon the method of contract, the legislature had no power to impose such restriction. That is, the city acquired a perpetual right to contract like a right to property or a right to exist.' This, as we have shown above, is to give greater rights against undesired legislation to cities than to men. The cases in regard to property rights of which the Dartmouth College case is the great example do not go to the extent of holding that the legislature cannot regulate the manner in which a corporation shall exercise its power to contract.

We adhere to the conclusion of our former opinion.

MR. JUSTICE CAMPBELL not participating.