Argued January 23, affirmed February 5, 1918.

# WATSON *v.* HURLBURT, SHERIFF.

(170 Pac. 541.)

**Homestead—Extent of Right in City Property—Improved Lot Worth More Than $1,500—Statute.**

1. Under Section 221, L. O. L., providing that the homestead of any family shall be exempt from judicial sale for the satisfaction of any judgment, and such homestead must be the actual abode of, and owned by, the family or some member, and under Section 222, providing the homestead shall not exceed $1,500 in value, nor 160 acres, if not located in town or city laid off into blocks and lots, in which case it shall not exceed one block, but that in no instance shall such homestead be reduced to less than 20 acres, or one lot, regardless of value, despite Sections 224 and 225, relating to the procedure to secure and confirm the homestead right, a husband and wife had right of homestead exempt from execution in their city property, comprising one lot with the house thereon, worth in excess of $1,500; that is, about $15,000.

**Homestead—"One Lot"—Statute.**

2. Homestead property in a city, consisting of approximately adjacent halves of two lots in a block irregular in shape and not of uniform size, being 50 feet in width on one street and 50.12 feet on another, the same as the lots in that part of the block, consisted of a "single lot" within the homestead statute (Sections 221, 222, L. O. L).

**Homestead—Construction of Homestead Laws.**

3. Homestead laws are remedial in their nature, and should be liberally construed to effect their purpose.

**Homestead—Notice of Claim of Exemption—Efficacy.**

4. Where property of husband and wife was attached October 23d, and October 24th the husband served on the levying officer a notice of claim of exemption as homestead as the actual abode of himself and family, such notice was prompt and timely, and not rendered insufficient or lessened in force because the wife, on behalf of the family, served a similar notice after the court had ordered sale of the attached property.

**Homestead—Waiver—Failure to Appear in Action.**

5. There was no waiver of the right of homestead by the failure of the husband who claimed it to appear in the action against him wherein the property was attached, and to object to the order of sale of the homestead property.

**Constitutional Law—Homestead—Grant of Special Privileges—Homestead Law.**

6. The homestead statute (Sections 221, 222) is not violative of Article I, Section 20, of the Constitution, as granting privileges or immunities to one citizen which under the same terms would not belong to all, because, as construed, a debtor claiming homestead living in

an addition where city lots are platted 25 by 100 feet, and his neighbor, just over the line, residing in an addition where the lots are platted 100 by 100 feet, would be on an unequal footing, in that each would be entitled to a homestead exemption of one lot irrespective of value.

**Homestead—Absence of Husband and Head of Family.**

7. The law will not deprive a family, consisting of husband and wife, of a homestead on the ground that the property is not occupied as such within the intent of the homestead law, merely because the husband and head of the family is absent on business in another state, or away temporarily for other reasons.

[As to who is head of the family and what constitutes a family, see notes in 61 Am. Dec. 586; 70 Am. St. Rep. 107.]

From Multnomah: ROBERT G. MORROW, Judge.

Department 2.   Statement by MR. JUSTICE BEAN.

The defendants, W. N. Daniels and J. Q. Daniels, partners under the firm name of La Grande Creamery Co., commenced an action in the Circuit Court for Multnomah County against the plaintiff, D. M. Watson, to recover $2,430.30 upon an account and on October 22, 1913, attached the real property involved in this suit.   On October 24, 1913, D. M. Watson, defendant in that action, caused to be served upon the sheriff a notice of claim of homestead exemption.   Thereafter on July 1, 1914, the firm obtained a judgment by default in their favor against D. M. Watson for $2,430.30, with interest and costs, and an order that the real property attached in the action be sold to satisfy the judgment, interest and costs, and that execution issue therefor.   On May 10, 1916, an attachment execution was issued upon the judgment and was placed in the hands of the defendant, T. M. Hurlburt, sheriff, commanding him to make sale of the attached premises in accordance with said execution, judgment and order of sale.   The real property attached was duly advertised for sale to take place on June 26, 1916. While this property was being advertised for sale and

on June 23, 1916, the plaintiff, Annie M. Watson, served upon the defendant, T. M. Hurlburt, a homestead notice claiming the property as the actual abode of the plaintiffs and as exempt. On June 24, 1916, two days before the sale was advertised to take place this suit was commenced to enjoin the sheriff from making such sale. The plaintiffs here claim the property in question to be exempt from execution sale as a homestead under the statutes of this state.

To the complaint the defendants answered denying that the plaintiffs, as husband and wife, or as a family, reside upon the premises. As a further and separate defense they averred in effect that the property consists of a portion of two separate and distinct lots having a frontage of 50 feet on the Cornell road, extending approximately 130 feet through to Summit Avenue in the City of Portland and having a frontage there of 50.12 feet; that the property is improved with a dwelling-house which cost over $9,000; that the land and dwelling are of the value of $15,000; that there is no uniformity in size or value of the lots platted in the city ranging from 25x100 feet to more than an acre, and in value from a few hundred dollars to $100,000; that blocks in the city range from 2,500 square feet to several acres in area. The answer sets forth in full all the proceedings in the original action consisting of the attachment of the real property in question, the judgment in favor of the La Grande Creamery Company, the order for the sale of the attached property, the issuance of the attachment execution and the advertisement for the sale of the property. The defendants in their answer tendered to plaintiffs the sum of $1,500 in satisfaction of their homestead rights in the realty.

Plaintiffs demurred to the further and separate answer. The court sustained the demurrer, after which testimony was taken on the issues. The court made findings of fact and conclusions of law in favor of the plaintiffs to which defendants objected and requested findings in their favor. The court passed a decree enjoining the sale of the property upon execution. Defendants appeal assigning error.        AFFIRMED.

For appellants there was a brief over the name of *Messrs. Wilson, Neal & Rossman,* with an oral argument by *Mr. Oscar A. Neal.*

For respondents there was a brief over the name of *Messrs. Manning, Slater & Leonard,* with an oral argument by *Mr. Woodson T. Slater.*

MR. JUSTICE BEAN delivered the opinion of the court.

1. Counsel for the defendants contend that the real property is not exempt as a homestead under the statute, except to the amount of $1,500 in value, and that the trial court erred in sustaining the demurrer to defendants' further and separate answer. Counsel for plaintiffs submit that a tract of land in a city, which does not exceed in area one city lot, having improvements thereon, although it exceeds in value $1,500, is exempt. The case involves the construction of the homestead exemption law. The title of the act reads:

"An Act to exempt homesteads from attachment and judicial sale": Sess. Laws 1893, p. 93.

The first two sections are as follows:

Section 221, L. O. L. "HOMESTEADS EXEMPT. MUST BE ACTUAL ABODE. The homestead of any family shall be exempt from judicial sale for the satisfaction of any judgment hereafter obtained. Such homestead must

be the actual abode of, and owned by such family, or some member thereof.''

Section 222, L. O. L. ''EXTENT OF HOMESTEAD EXEMPTION. Such homestead shall not exceed $1,500 in value, nor exceed one hundred and sixty acres in extent, if not located in town or city laid off into blocks and lots; if located in any such town or city, then it shall not exceed one block; but in no instance shall such homestead be reduced to less than twenty acres nor one lot, regardless of value.''

The first section decrees, without qualification, that the homestead which is the actual abode of and owned by a family or some member thereof shall be exempt. Section 2 limits the extent of the exemption. The closing words of this section are a distinct and unqualified command that in no instance shall a homestead be reduced to less than twenty acres nor one lot, *regardless of value.* Thus far the act establishes the substantive right and the extent thereof. Giving to each part of the act its appropriate meaning so that each section will perform the office intended, there is no provision in conflict with the clause referred to. Sections 224 and 225, L. O. L., relate to the procedure to secure and confirm the right previously granted. Section 224 gives directions, when a levy is made upon such homestead, for notice to the officer that the owner claims the premises as a homestead, whereupon such officer shall notify the creditor. Provision is then made that ''if such homestead shall exceed the minimum in this act,'' that is, if the area of the homestead exceeds twenty acres of land or one city or town lot, then if the creditor ''deem it of greater value than $1,500,'' he may proceed under either of the latter sections and direct the sheriff to select three disinterested householders to appraise such homestead, commencing with the twenty acres or lot upon which the dwelling

is located, appraising such lot or twenty acres separately,

"and if the same exceed $1,500, then the sheriff shall proceed to sell all in excess of $1,500 by lots or smallest legal subdivisions, offering them in the order directed by the judgment debtor, if he chooses to direct; otherwise, he shall sell the same as aforesaid, so as to leave the homestead as compact as possible."

The directions contained in the latter section are somewhat involved and tend to obscure the meaning of the other part of the act. When we notice that the conditions upon which the provisions for an appraisement and sale are made applicable are that "if such homestead shall exceed the minimum in this act, and he deem it of greater value than $1,500," it is evident that the language of Sections 224 and 225 does not overcome the plain and unambiguous provision of Section 222, that "in no instance shall such homestead be reduced to less than twenty acres nor one lot, regardless of value." Section 225 merely provides for an alternative method of procedure based upon the same conditions as to area and value as prescribed in Section 224. In the event that a homestead exceeds the defined limit of extent and value and such excess cannot be practicably sold separately, the whole may be sold, adding $1,500 to the lien and that amount of money be exempt. The function of Sections 224 and 225 is to provide a means of procedure for a creditor to avail himself of the benefit of the excess when, and only when, the homestead claimed exceeds in area and also in value the limit prescribed by Section 222. The former two sections were not intended to limit or declare the right conferred by the latter. It was obviously the primary legislative intent, as the title of the act suggests (see 36 Cyc. 1134), to grant an ex-

emption of the home of the debtor, to the extent of twenty acres of land, or one town lot, together with a dwelling-house thereon, regardless of the value of the property. Such homestead may be greater in extent when the same does not exceed $1,500 in value or 160 acres of land or one block: *In re Barde,* 225 Fed. 715 (140 C. C. A. 589). In the latter case the statute in question was construed by Judge BEAN of the United States District Court and by the Circuit Court of Appeals. The able opinion of the latter court was written by District Judge VAN FLEET. Our investigation leads to the same determination. For more than twelve years the imperative of the lawmakers, which leaves no option, has remained in the latter part of Section 222 without change. Any hardship or inequality which may be worked by the enforcement thereof must be prevented by legislative command. In the case at bar the homestead claimed does not exceed one lot or extend beyond the limit defined in Section 222; therefore, the incongruous provisions of the succeeding sections are not directly involved. There is no excess to be sold. There was no error in sustaining the demurrer.

2, 3. It is contended on behalf of defendants that the homestead in question does not constitute only one lot within the meaning of the statute and is not exempt under any construction of the law. This claim is made for the reason that the boundaries of the homestead are not identical with the lines of the lots; or that the premises are not within the limits of a single lot. The homestead claimed is approximately adjacent halves of lots 4 and 5 in block 1 of Fordham Addition to the City of Portland, which addition consists of two blocks. These are irregular in shape and are not of uniform size; so also are the lots. The land claimed by plain-

tiffs is 50 feet in width on one street and 50.12 on another, the same as the lots in that part of the block. It is not quite rectangular, the length of the sides varying slightly. Lots 4 and 5 are of about an average size. It may be fairly said that the homestead does not exceed one lot, taking as a standard the other lots in the Addition. The statute does not require that the homestead shall constitute but one lot. "The actual abode" of the family is the thing that is exempted. The extent or amount thereof "shall not exceed one block; but in no instance shall such homestead be reduced to less than twenty acres nor one lot." The homestead in question consists of one lot within the meaning of the statute: 13 R. C. L., p. 576, § 39. Homestead laws are remedial in their nature and according to the weight of authority should be liberally construed so as to effect the purpose of the statute: 21 Cyc. 461; 15 Am. & Eng. Ency. of Law (2 ed.), p. 533; 13 R. C. L., p. 547, § 8.

4, 5. It is next asserted by defendants' counsel that the plaintiffs could not claim the property exempt as a homestead after the court had entered an order for the sale of the attached property. We fail to see how this question is germane to the case. The property was attached October 23, 1913. On October 24th of the same year, D. M. Watson, the husband, served upon the levying officer a notice of claim of exemption as a homestead as the actual abode of himself and family. The notice was prompt and timely. The fact that as a matter of precaution the wife on behalf of the family later served a similar notice would not lessen the force of the first notice which was sufficient: Section 224, L. O. L; *Wilson* v. *Peterson,* 68 Or. 525 (136 Pac. 1187). There was no waiver of the right of homestead by the failure of D. M. Watson to appear in the action and

object to the order of sale. The taking of the order of sale would perhaps preserve whatever rights the attaching creditors might have had if there had been an abandonment of the homestead: *Hansen* v. *Jones,* 57 Or. 416 (109 Pac. 868); *Bowman* v. *Sherrill,* 59 Or. 603 (117 Pac. 1122).

6. Defendants' counsel make the further claim that under the statute, as construed by the lower court, a debtor living in one addition where lots are platted 25x100 feet, while his neighbor just across the line resides in an addition where the lots are platted 100x100 feet, would be upon an unequal footing and under the exemption law unreasonable and unconstitutional, as granting privileges or immunities to one citizen which, under the same terms, would not belong to all, in contravention of Article I, Section 20, of the Constitution of Oregon. The same inequality might be urged against a law exempting a team of two horses. Debtor A might own a team of horses of the value of $400 and his neighbor debtor B a pair of horses of the value of only $100. Such inequalities in the operation of laws are not unusual. The legislature in creating the homestead exemption, and in prescribing its limitations, must legislate for the whole state, and adopt a general rule to cover a multitude of variations and which in its general operations would secure a reasonable exemption. The primary object is to exempt from judicial sale the actual abode of a debtor's family, together with the land and the appurtenances connected with the home, sufficient for its convenient enjoyment. Quantity and value operate only incidentally as limitations upon the homestead exemption: 13 R. C. L., p. 580, § 44. It would be impossible to make the extent of the homestead the same in all instances. So long as the same is in accordance with the humane

87 Or.—20

policy of the law creating the homestead right, and not to an unreasonable extent in area, the law should be applied to all cases coming within the equity and spirit of the statute, although it may in some instances work out a slight inequality: 13 R. C. L., p. 543, § 4; *Heidel* v. *Benedict,* 61 Minn. 170 (63 N. W. 490, 52 Am. St. Rep. 592, 31 L. R. A. 422).

7. It is also contended by counsel for defendants that the property is not occupied as a homestead within the intent of the law. Mrs. Annie M. Watson, one of the plaintiffs, testifies in substance that she was married to her present husband in 1880; that they have lived upon the property in suit continuously since October 24, 1911, when her husband purchased it; and that he has been away temporarily working for a company at Tulsa, Oklahoma, to earn money with which to settle up. The evidence supports the complaint. The law will not deprive a family of a homestead merely because the husband and head of the family is absent on business or away temporarily for other reasons: 13 R. C. L., p. 648, § 109; *Griffin* v. *Sheley,* 55 Iowa, 513 (8 N. W. 343); *Pierson* v. *Truax,* 15 Colo. 223 (25 Pac. 183).

The decree of the trial court should be affirmed, and it is so ordered.        AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE BURNETT concur.