W. G. SHAFFER, Appellant, v. LEE MILLER et al., Appellants; FRANK C. BURKE et al., Appellees.

MORTGAGES: Decree—Protecting Tenant. A decree in a real estate
1 mortgage foreclosure may very properly provide for the protection of a tenant by requiring that the property be first offered for sale *"subject to the tenant's lease."*

HOMESTEAD: Transfer or Incumbrance—Lease by Husband. A wife
2 may not question the validity of the husband's long-time lease of the family homestead when she acquiesced in said lease, though reluctantly, and moved from the premises and remained away for several years.

*Appeal from Chickasaw District Court.*—H. E. TAYLOR, Judge.

APRIL 6, 1923.

SUIT in equity, for foreclosure of mortgage and other equitable relief. Decree granting foreclosure as prayed, but attaching thereto certain conditions, to which the plaintiff and the de-

fendants Miller and wife except. The nature of the controversy will be more fully stated in the opinion.—*Affirmed.*

*Shaffer & Rehorst* and *Lundy, Peisen & Soper,* for appellants.

*M. E. Geiser,* for appellees.

WEAVER, J.—The mortgage in question was made by the defendants Miller and wife to Carrie L. Sherman, of whom the plaintiff, Shaffer, is assignee, to secure the payment of 30 promissory notes of $500 each, all bearing dates of April 30, 1910, and 5 other promissory notes of $1,000 each, all of which notes appear to have been duly indorsed to Shaffer, without recourse. This suit for foreclosure was begun August 12, 1920, the petition therefor alleging that no part of the notes had been paid, except the interest thereon, and that there was due and unpaid the sum of $20,000, with interest at 8 per cent from April 30, 1920.

1. MORTGAGES: decree: protecting tenant.

In a separate division of the petition, Carrie L. Sherman and twelve other named persons are impleaded as defendants, and it is alleged that, on and before January 26, 1910, the real estate described in the mortgage aforesaid was owned by one Alfred E. Bigelow, and that, on the date last named, said Bigelow and wife executed a warranty deed for said property to the defendant Lee Miller, in which deed there was an expressed consideration of $3,500 in hand paid by Lee Miller. Embodied in the same instrument was a provision. by which said grantee agreed "to erect a hotel building on the described premises, to be completed not later than January 1, 1911, and costing not less than $20,000, otherwise the title to the premises to revert to Alfred E. Bigelow." It is further alleged that the said Lee Miller did, during the year 1910, erect the required hotel building, at an approximate cost of $30,000, and thereby satisfied the condition or stipulation contained in the deed from Bigelow, and that the same was accepted by the latter as satisfactory and as perfecting the absolute title in Miller. It is further made to appear that Bigelow and wife are now both deceased, and that the additional defendants named in the second division of the petition are the

only persons having any interest in the estate of said deceased persons. It is therefore prayed that the title conveyed by Bigelow and wife be adjudged absolute in his said grantees, and that plaintiff's mortgage be established and confirmed as a prior lien upon said property, and that the same be foreclosed for the unpaid debt represented by the notes indorsed to plaintiff.

In a third division of the petition, plaintiff states his claim as against the defendants Frank C. Burke and Perle E. Burke, as follows: After repleading the matter contained in the first division, and asserting a paramount lien on the property securing payment of the notes, he alleges that there was filed for record in the office of the county recorder a certain lease, which constitutes an apparent claim or cloud upon the title to said property. The lease in question bears date of April 17, 1913, and is executed by Lee Miller to Frank C. Burke, and purports to lease said property to the latter for the term of 10 years, at the rental of $200 per month, and among other things embodies the following provision, to wit:

"It is further agreed that at the end of 10 years the second party, his heirs and assigns shall at their option have the privilege of renting said premises another 10 years for the same amount of rent as herein stated and on the same terms as provided in this lease."

The plaintiff prays that the lien of his mortgage be established and confirmed as superior to any right or claim of the defendants Burke, and that said mortgage be foreclosed.

Answering this petition, the defendants Burke admit the lease as alleged, and further plead that, at the date thereof and at all times since, said property was being occupied and used for hotel purposes; that, having obtained said lease, said Frank C. Burke also purchased and took over from said Miller the furniture, fixtures, and furnishings, paying therefor the sum of $10,000; that thereafter, said Frank C. Burke by oral assignment transferred all his interest in said property and lease to his codefendant Perle E. Burke, who at once took possession thereof, and has since conducted and managed the same as a hotel. The said Perle E. Burke further pleads his desire and purpose to avail himself of the option to rent said property for the extended period of 10 years, as provided for in the original

lease; and asserts that the option so given is an element of material value in such lease, the denial of which right would occasion said tenant great loss. He therefore prays that, if a decree of foreclosure of plaintiff's mortgage is granted, it be provided therein that, at the sale to be made in pursuance of such foreclosure, the interest of Lee Miller and Bertha E. Miller in said property be first offered for sale, subject to the rights of Perle E. Burke under said lease, and if sufficient is bid upon such offer to satisfy plaintiff's claim, together with interest and costs, then, in such event, that the rights of Perle E. Burke as tenant under said lease be not sold, but remain undisturbed; but if such bid is not obtained, then and then only shall the property be offered and sold in its entirety.

In a second count of the answer, it is charged that the notes secured by the mortgage were transferred to the plaintiff on the eve of their due date, to be foreclosed by him in the secret interest of said Lee Miller, and thereby to cut off and determine Perle E. Burke's rights under the lease.

Both plaintiff and Miller demurred to the answer of the Burkes. The demurrer was overruled. Replying to said answer and cross-demand, Lee Miller and Bertha E. Miller aver that they are husband and wife, and plead a homestead right in the mortgaged premises from a time antedating the lease, and that such lease, being signed by Lee Miller only, is void. To this the Burkes rejoin by denial, and by alleging that, if the Millers ever occupied the property as a homestead, they abandoned it and removed from the state.

The record of the pleadings is very unnecessarily complicated and obscured by a multiplicity of amendments and motions, but we think that the foregoing is sufficient to develop the real controversy. On trial to the court, a decree was entered, establishing the plaintiff's mortgage as the first lien, and foreclosing it as against all defendants. It further confirmed and established the interest of Perle E. Burke as tenant of said property under the lease above mentioned, subject, however, to the prior lien of the mortgage, and provided that, upon sale under said foreclosure, the property be first offered to bidders, subject to the rights of the tenant under said lease, and that, if a sale can be so made for an amount sufficient to satisfy plain-

tiff's judgment, with interest and costs, said tenant's right in
the premises shall be preserved, and attach to the property in
the hands of the purchaser; but that, if such sale cannot be
made, then the entire property shall be offered and sold for the
discharge of the mortgage indebtedness.

I. Counsel for appellants give first attention to the propo-
sition that the case presented is not one to which the rule for
"marshaling assets" can be applied, because that rule or doc-
trine can be invoked only where a junior lien holder's lien at-
taches to only a part of the assets; and he demands that the
senior shall first exhaust his lien on those assets or securities
which are not available to the junior.

That the rule is as stated, in an appropriate case, may be
admitted; but we are unable to see its application to a case like
the one before us. The decree appealed from does not undertake
a marshaling of assets or liens in any such sense. Here we have
a suit to foreclose a mortgage on a specified item of real estate.
It is the right of the mortgagee to bring in and make defendants
all persons having or asserting any junior claims upon the
property, whether they be subsequent purchasers, junior mort-
gagees, or tenants. These parties may appear to the suit and
assert the validity of their several claims and ask to have their
interests recognized, protected, and enforced in the order of
priority in which the court shall find that their rights attached
to the property. No authority is cited, and we think none can
be found, which inhibits the court from adjudicating all the
claims presented, and fixing the order in which such claims
shall be satisfied from the sheriff's sale of the property. Neither
the holder of the senior lien nor the common debtor is in any
manner wronged or injured, nor can the junior creditors com-
plain if prior liens are first paid, while their rights to the benefit
of the surplus, if any there be, are preserved. If the appellee
were a junior mortgagee, instead of a lease holder, it would
hardly be denied by counsel that the court may not properly,
by its decree, protect such junior lien; and we can perceive no
good reason why a tenant's right may not also be recognized and
established, subject, of course, to the paramount right of the
senior mortgagee. The latter has no interest in the premises
except to insist that the property, or so much thereof as may

be necessary for that purpose, shall be first applied to the payment of his claim; and when this is provided for, the remaining question for consideration is the one presented by the issue between the mortgagor and his tenant. Both are parties to the suit, and have set up therein their several claims of interest in the property. Since the court has jurisdiction of the persons and of the subject-matter, it is well within the powers of a court of equity to adjudicate and determine the entire controversy. It is entirely possible, if not probable, that the mortgagor Miller may exercise his right to pay the foreclosure judgment, or to redeem from a sale thereunder; and in such event, it is equitable to provide that the right of the tenant to remain undisturbed in the enjoyment of his leasehold, if it be otherwise valid, shall be protected by the decree. In providing such protection, the court does not attempt any marshaling of assets, in the technical meaning of that phrase. It does no more than to fix the order of preference in which the claims of the several parties in interest are to be satisfied out of the common fund.

II. The point most strongly urged by the appellants Miller and wife is that the leasehold by Burke is void because the leased property was their homestead, and, as the wife did not join in the execution of the instrument, it has no valid force or effect. The evidence tends to show that the only building upon the property was erected as a hotel, in performance of the condition contained in the deed from Bigelow to Miller. It is 40 by 96 feet, ground measure, and three stories and basement in height. The plan includes a lobby, office, dining rooms, kitchen, and other conveniences usual in hotels. On the second floor, in addition to 15 guest rooms, are 3 or 4 rooms across the front of the building, ordinarily used by the family of the landlord. The third floor is given entirely to guest rooms. Miller and wife were married before the building was erected, and on its completion, and until the property was leased to Burke, they occupied the front rooms on the second floor, already mentioned. At the date of the lease, the wife was in California, on what she testifies was a temporary visit. Her husband wrote of the making of the lease, and she says she objected thereto. Later, on her return to New Hampton, she found the

2. HOMESTEAD: transfer or incumbrance: lease by husband.

Burkes already installed in the building, conducting the hotel, and, upon talking the matter over with her husband, and being told by him that her signature to the lease was not essential to its validity, she yielded her opposition, and permitted the Burkes to continue in possession, without expressed opposition on her part. She remained in the house about a week as a complimentary guest, when she, with her husband and child, removed to a rented house in town for a short period, after which they removed to California. There they bought and occupied a home for about two years, then sold it, and returned once more to New Hampton. Within a few months after their return, they purchased a hotel in Eldora, Iowa, the title being taken by Mrs. Miller, and from that date, they have lived in the hotel so purchased. In California, Miller engaged in business with his father-in-law. He voted there on at least two occasions, and since moving to Eldora he has voted there. He makes no claim that, in leasing the hotel, he understood or believed that he was retaining any right of homestead therein. As a witness, he says that he understood that the lease "ran 20 years, providing Burke saw fit to exercise the option of renewal at the end of 10 years," and adds: "I understood the terms of the lease, and intended to carry them out." He further says:

"I first formed the intention of returning to the hotel at New Hampton immediately, when I found how bad my wife felt about it when she got home. It was my intention to return to the hotel if I could get possession,—if I could buy it or get someone else to buy it for me. I wanted to get hold of the hotel, and expected to return any time I could get it. * * * I don't know as I had any thought at the time I made the lease, of coming back and running the hotel."

It will thus be seen that, so far as the husband was concerned, the idea of returning to the hotel was formed after the lease was made and the tenant was in possession, and that the purpose then formed was not to assert a claim of homestead, but to repossess the property, if possible, by purchase of the tenant's right. Indeed, until his pleading was filed in this case, he appears never to have denied or challenged the validity of the lease he had made. The wife, as a witness, after stating her original objection to leasing the hotel, as already indicated, testifies that,

being informed by her husband that her signature to the lease was not necessary, she believed it, and united with him in removing their effects from the building. She says: "I felt I should have a right there, but was told that I didn't; so there was nothing else to do." She recites their purchase and use of a home in California, its subsequent sale, and the return to Iowa, the purchase of the hotel at Eldora and the residence of herself and family there for three years and more, substantially as related by her husband; but further says that she always looked upon the property in controversy as her home, and always had the intention of returning to the hotel, if it could possibly be done, and still has the same intentions, "if it is possible to carry them out," and does not expect to stay at Eldora "any longer than is necessary to dispose of the property."

Much attention is given in the record to describing the details of residence and occupation of the property in controversy by Miller and family, as bearing upon its alleged homestead character, the details of which we think it unnecessary to dwell upon; for, without now committing ourselves upon the proposition whether the owner of a large and expensive hotel block or building may, by living therein or occupying a few rooms therein for family use, impress a homestead character upon either the entire property or upon a fractional part thereof, we think it sufficient, for the purposes of this case, to say that, even if it be conceded that Miller and wife had acquired a homestead in this property, it appears quite conclusively that they abandoned the same, and cannot be heard to assert it in this action. It is true that a homestead, once acquired in realty, is not the subject of valid conveyance, except by the joint deed of both husband and wife; but it is equally true that it may be lost or abandoned by actual removal under circumstances clearly indicating that such removal is not merely temporary. It has often been said, in cases turning upon this question, that "no general rule can be enunciated; each turns upon, and the decision of each exacts a special regard to its own peculiar facts." *Fyffe v. Beers,* 18 Iowa 4, 8. It has been said to be "the general rule that, to entitle a party to the homestead exemption, he must actually occupy and be in possession of the premises as a home;"

though, of course, the homestead right is not lost when posses-
sion is left for a merely temporary purpose. *Davis, M. & Co.
v. Kelley,* 14 Iowa 523. Where there is an entire removal of
the husband and wife from the actual possession and actual use
of the property as a home, the burden of showing that such re-
moval was temporary, and consistent with a continuing pur-
pose to return, and to occupy and use it as a home, is upon the
party asserting such right; and we are satisfied that such burden
is not met or removed in the case before us. *Vittengl v. Vit-
tengl,* 156 Iowa 41, 45. The lease of the premises was an ex-
clusive one; it contained no exception or reservation indicating
that it was a mere temporary expedient, or that the tenure was
not for a prolonged period of 10 years, with a right in the les-
see to an extension or renewal for 10 years longer. As we have
already noted, Miller, as a witness, himself makes no pretense
of any purpose or intent to assert a homestead right in the
premises, or right of possession in hostility to or in avoidance
of the lease made by him. The utmost to be made of his testi-
mony in this direction is that, at some time after the lease was
executed and the lessee had taken possession, he formed an in-
tent "to return to the hotel, if he could buy it or get someone
else to buy it for him." He subsequently purchased a home in
California, and with his wife occupied it as their home for two
years. During all the years from the date of the lease of the
New Hampton hotel, he recognized the right of his lessee to the
possession of the property, by receiving the stipulated rent. He
acquired and exercised the right of franchise in California, and
later, with his wife, acquired still another home in Iowa. He
could not hold exempt two homesteads at the same time. The
wife's claim in this respect, even if the entire truth of her testi-
mony be fully conceded, does not materially affect the situation
created by the act of her husband. Assuming, for the purposes
of this argument, that the lease made to Burke was invalid, it
was competent for both husband and wife to waive the objec-
tion and recognize the validity of the lessee's possession. The
husband did give possession to Burke before his wife returned
from California; and within a few days after her return, though
expressing some dissatisfaction with the transaction, she united
with him in removing their effects from the hotel and giving full

possession to the tenant. Thereafter, for a period of seven years, she acquiesced in the recognition of Burke's leasehold interest, and resided with her husband in their own home in California for two years; and then she herself purchased the hotel at Eldora, where they have lived since. If these circumstances do not operate as an estoppel or waiver of her right, if any she had, to assert a homestead in the New Hampton hotel, it would be hard to conceive a situation to which such rule would ever be applicable. After a discussion of the authorities on this point, we have stated the rule to be that, where the husband and wife have ceased to use and occupy the alleged homestead, the burden is upon them to "show that there was a *definite and fixed* purpose to return," in order to preserve the homestead right. See, also, *Maguire v. Hanson,* 105 Iowa 215; *Conway v. Nichols,* 106 Iowa 358; *Kimball v. Wilson,* 59 Iowa 638; *Newman v. Franklin,* 69 Iowa 244.

If the case before us presented an instance where the husband abandoned his home and family, his act would not, of course, operate to estop his wife from insisting upon her homestead right; but where he still maintains the family relation, and by deed or lease or by other act assumes to abandon the homestead, and the wife leaves the homestead to accompany her husband, when he abandons it, she waives her right to object; and if, after so yielding her right, she finds the change to have been unwise or unfortunate, she cannot withdraw her waiver, to the prejudice of third parties.

Without further discussion at this point, it is sufficient to say that the trial court's conclusion denying the appellant's plea of homestead is fully sustained by the record. This conclusion involves no holding, as counsel argue, inconsistent with the statute invalidating conveyances of a homestead where the husband and wife do not unite in executing the same joint instrument, but simply reaffirms the well settled equitable rule that the right to rely upon a statutory provision or acknowledged principle of law may be lost, abandoned, or waived by conduct radically inconsistent with the relief demanded.

We find nothing in the decree below of which just complaint can be made. The priority of right of the several parties appears to be fixed in due order of their several equities.

The decree is, therefore,—*Affirmed.*

PRESTON, C. J., STEVENS and DE GRAFF, JJ., concur.