Argued September 7, 1962, affirmed March 13, 1963

# FLEISCHHAUER *v.* BILSTAD ET AL, GRAY ET UX
## 379 P. 2d 880

*Will H. Masters,* Portland, argued the cause for appellants. On the briefs were Masters and Masters.

*Paul D. Hanlon,* Portland, argued the cause for respondent. On the brief were Morton H. Zalutsky and Hart, Davidson, Veazie & Hanlon.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, GOODWIN and LUSK, Justices.

LUSK, J.

This is a declaratory judgment proceeding instituted for the purpose of obtaining a declaration that certain real property is subject to the lien of a judgment in favor of the plaintiff Josephine Fleischhauer. The property, described as Lot 1, Block 13, Beusonic Heights, Washington County, Oregon, was formerly owned and occupied as a homestead by the defendants Herb Bilstad and Leola Bilstad (who are not parties

to this appeal). The defendants Omar W. Gray and Zeda M. Gray, husband and wife, hereinafter referred to as the defendants, purchased the property from the Bilstads after the plaintiff had recovered a judgment against the latter in the circuit court of Washington county. The court entered a declaratory decree favorable to the plaintiff from which the defendants have appealed. The court held, not only that our statute as construed by this court does not exempt a homestead from the lien of a judgment, but, in addition, that the Bilstads had abandoned the homestead prior to the sale of the property to the defendants. Both propositions are challenged by the defendants in this court.

Upon the former question the plaintiff relies, as did the trial judge, on *Bush v. Shepherd, Adm'r.,* 186 Or 105, 205 P2d 842 (1949). The defendants say that this court erred in its construction of the homestead statute in that case and urge that the decision should be overruled.

The applicable statute, ORS 23.240, originally enacted as Chapter 112, Oregon Laws 1919, reads:

"A homestead shall be exempt from sale on execution *from the lien of every judgment* and from liability in any form for the debts of the owner to the amount in value of $7,500, except as otherwise provided by law. The homestead must be the actual abode of and occupied by the owner, his spouse, parent or child, but such exemption shall not be impaired by temporary removal or absence with the intention to reoccupy the same as a homestead, nor by the sale thereof, but shall extend to the proceeds derived from such sale to an amount not exceeding $7,500, while held, with the intention to procure another homestead therewith, for a period not exceeding one year." (Italics added.)

Except for an increase in the amount of the exemption from $3,000 to $7,500 and a verbal change that is not material, the statute reads today as it did when *Bush v. Shepherd, Adm'r.,* was decided. See section 6-1301, OCLA. We held in that case that a motion of a judgment debtor for the satisfaction and discharge of the judgment was erroneously allowed by the circuit court. The judgment debtor based his motion on the ground that he had been discharged from the payment of such judgment by his discharge in bankruptcy and that the property involved was his homestead which had been set off to him as exempt property in the bankruptcy proceedings. We held that the action of the bankruptcy court was effective only to discharge the debtor from his personal liability and not to release a valid lien. We said that ORS 18.350 (then section 6-801, OCLA) imposes the lien of a judgment upon all the real property of the judgment debtor in a county from the time of docketing and that the homestead statute contains no exception from this provision. Notice was taken of the decision in *Willamette C. & C. Ser. v. Henry,* 138 Or 460, 7 P2d 261 (1932), where we said at page 465:

"At the legislative session of 1919, the 1893 homestead exemption statute as amended in 1905 was repealed and our present law enacted. It will be observed that the present law exempts the homestead from (1) judicial sale on execution, (2) the lien of every judgment, (3) liability in any form for debts of the owner."

But this statement was said to be dictum and the conclusion of the court was that the legislature did not intend to exempt the land claimed as a homestead from judgment liens, but only "to prohibit the sale of it on execution when the right to the property as a home-

stead is timely asserted and established." 186 Or at 120.

The briefs of counsel in *Bush v. Shepherd, Adm'r.*, were singularly devoid of argument upon the construction of the 1919 Act—a lack which well may have contributed to the error into which we are now convinced the court fell in that case.

A history of homestead legislation in this state and the course of judicial decision will aid in demonstrating the accuracy of this statement. This history was recited in *Willamette C. & C. Ser. v. Henry,* but its repetition briefly here is necessary for a full understanding of the question. The first homestead statute was enacted in 1893. It provided:

> "The homestead of any family shall be exempt from judicial sale for the satisfaction of any liability hereafter contracted, or for the satisfaction of any judgment hereafter obtained on such debt." Oregon Laws 1893, p 93.

This section was amended in 1905 so as to read:

> "The homestead of any family shall be exempt from judicial sale for the satisfaction of any judgment hereafter obtained. Such homestead must be the actual abode of and owned by such family or some member thereof." Oregon Laws 1905, ch 221.

It was held in *Hansen v. Jones,* 57 Or 416, 109 P 868 (1910), that under the language of these sections "the exemption of the homestead is only from judicial sale, and not from the lien of a judgment, nor from the levy of an execution thereon." 57 Or at 420. Hence, the court decided that upon a conveyance of the property by its owner "the homestead right ceased to exist, and [the] grantee took the full title freed therefrom, but subject nevertheless to the judgment lien, which

from that time became superior in right." 57 Or at 426.

In the course of a discussion of the decisions in other states the court said:

"By the early decisions of the Supreme Courts of Wisconsin and Minnesota, statutes providing in general terms that judgments should be liens on all the defendant's real estate were construed as extending such liens over homesteads, which by law were exempt from sale under execution. This will appear by the decisions cited from those states; but the rule as announced in those decisions was later abrogated by statutes enacted after the rendition of such decisions, and therefore the later decisions of those states are not opposed to this view. * * *" 57 Or at 422.

The significance of these observations will appear later.

The construction placed upon the former statute in *Hansen v. Jones* was approved in *Wilson v. Peterson,* 68 Or 525, 136 P 1187 (1914) and *Johnson v. Tucker,* 85 Or 646, 167 P 787 (1917). At the session of the legislative assembly next following the decision in *Johnson v. Tucker* the prior law was repealed and the present statute enacted. Following enactment of the 1919 statute, came *Willamette C. & C. Ser. v. Henry* and then *Bush v. Shepherd,* overruling the so-called dictum in the former case, and, in effect, reinstating the decisions construing the repealed statute. That is to say, *Bush v. Shepherd* holds that, notwithstanding the very marked change in language, no change in meaning was effected by the 1919 enactment. While the presumption of a change of intention from a mere change of language in a statute is not always entitled to weight (Endlich, Interpretation of Statutes, § 378),

still it must be acknowledged that the new language of the 1919 Act, "from the lien of every judgment and from liability in any form for the debts of the owner", is sufficiently arresting to raise a presumption that a departure from the old law was intended, particularly in view of the fact that our decisions construing the former law had held that a homestead was *not* exempt from the lien of a judgment. See *Rieger v. Harrington,* 102 Or 603, 613, 203 P 576; 1 Sutherland, Statutory Construction 412, 415, Amendatory Acts § 1930; 50 Am Jur 261, Statutes § 275.

There is convincing evidence that the 1919 Act was copied in relevant part from a Wisconsin statute adopted in 1878, Wisconsin Revised Statutes § 2983 (1878), which is now substantially West's Wisconsin Statutes Annotated § 272.20. See Lacy, Homestead Exemption—Oregon Law, A Postcript, 34 Ore L Rev 1, 9.[1] The Wisconsin statute, as it was in 1919, provided:

"A homestead * * * shall be exempt from seizure or sale on execution, from the lien of every judgment and from liability in any form for the debts of such owner to the amount in value of five thousand dollars, * * *."

This statute had been construed by the Supreme Court of Wisconsin prior to 1919 as exempting a homestead from the lien of a judgment. *Carver v. Lassallette,* 57 Wis 232, 15 NW 162 (1883); *Smith v. Zimmerman,* 85 Wis 542, 55 NW 956 (1893). The statute had the effect of changing the law in that regard as previously announced in *Hoyt v. Howe,* 3 Wis 752, 62 Am Dec 705 (1854), which construed language of the older

---

[1] Professor Lacy's article ably sustains his thesis that Bush v. Shepherd was wrongly decided.

Wisconsin statute similar to that used in the original homestead law of this state and in the 1905 amendment thereof. *Hoyt v. Howe* was cited by this court in *Hansen v. Jones* as supporting its construction of our former statute and, as we have seen, the court pointed out that the later decisions of the Wisconsin court were not opposed to this holding because they were based on a change in the statute.

■ In view of the adoption in this state, substantially, of the portion of the Wisconsin statute quoted above so soon after the decision in *Johnson v. Tucker* and the pointed reference in *Hansen v. Jones* to the state of the law in Wisconsin, this would seem to be a clear case for application of the presumption that when the legislature adopts the statute of another state it intends to adopt also the construction theretofore placed upon the statute by the highest court of that state. *Big Butte H. & C. Ass'n v. Anderson,* 133 Or 171, 182, 289 P 503, 70 ALR 399. Even without the aid of this presumption it would be difficult, as we have already observed, to hold that the legislature did not intend to make a change in the law when it added the language respecting the lien of every judgment in the 1919 enactment.

About the only argument that can be even plausibly made in opposition to this view—and it has been made by counsel for the plaintiff—is that the legislature did not copy the Wisconsin statute exactly, but left out a comma, which is found in the Wisconsin statute, between the first phrase, "exempt from sale on execution", and the second, "from the lien of every judgment". Because of this omission it is sought to have the language read as though it were one continuous phrase, thus—"exempt from sale on execution from the lien of every judgment". So read, "from the lien

of every judgment" modifies "sale on execution" instead of "exempt". If this was deliberately done one would be hard put to explain why it was done. Obviously, the words, "exempt from sale on execution", were used as a substitute for "exempt from judicial sale * * * for the satisfaction of any judgment" in earlier statutes. Nothing more needed to be said to express that idea. If it were desired to be more precise (though needlessly so, because sale on execution means a sale to enforce a judgment pursuant to statute) no one even fairly conversant with English usage and legal terminology would have added "from the lien of every judgment". A "sale on execution from the lien of every judgment" is little short of meaningless.

■ On the other hand, when the clause is read as though there were a comma between the two phrases, the language is clear and the intent obvious. That intent was to liberalize the homestead statute which theretofore had contained an exemption from judicial sale only, by adding an exemption from the lien of a judgment obtained against the owner. While it is true that punctuation may be resorted to as an aid in construction when it tends to throw light on the meaning, yet, in general, little reliance is placed upon punctuation and it will be disregarded where otherwise the legislative intent could not be given effect. *Mackenzie v. Douglas County,* 81 Or 442, 450, 159 P 625, 1033; *Sargent v. American Bank and Trust Co.,* 80 Or 16, 42-43, 154 P 759, 156 P 431. See, also, 50 Am Jur 249-250, Statutes § 253. "For the purpose of arriving at the true meaning of a statute, courts read with such stops as are manifestly required." *United States v. Lacher,* 134 US 624, 628, 10 S Ct 625, 33 L ed 1080. To the same effect, see *Hammock v. Loan and Trust Co.,* 105 US 77, 84, 26 L ed 1111; *United States v.*

*Oregon & C. R. Co.,* 164 US 526, 541, 17 S Ct 165, 41 L ed 541. We are of the opinion that the words of the statute under consideration should be read with a stop after "execution".

When so read, full effect may be given to the concluding words of the section that "such exemption shall not be impaired by temporary removal or absence with the intention to re-occupy the same as a homestead, nor by the sale thereof," etc. These provisions, it should be noted, were likewise taken from the Wisconsin statute. If a judgment against the owner of a homestead is held to be a lien upon the homestead property, the exception extended to the proceeds of a sale "while held, with the intention to procure another homestead therewith, for a period not exceeding one year" would be without value to the owner, for the purchaser would deduct the amount of such judgment from the price he would otherwise pay. As Professor Lacy points out in the article to which we have referred: "The result is the same as if the debtor could sell for the full unencumbered value of his house but had to hold the proceeds subject to levy." 34 Ore L Rev at 14. In these circumstances the exemption under the interpretation given the statute in *Bush v. Shepherd* becomes illusory.

Courts are properly reluctant to overrule a precedent which lays down a rule of property. It is not clear to us, however, that anyone has ever been prejudiced because of reliance on *Bush v. Shepherd* unless it be homestead owners who may have given up rights which but for that decision would have been asserted. We therefore overrule *Bush v. Shepherd,* reinstate the so-called dictum in *Willamette C. & C. Ser. v. Henry,* and hold that in this case the defendants took the property free from the lien of the plaintiff's judg-

ment unless, prior to the conveyance to the defendants, the Bilstads had abandoned the homestead. That question will now be considered.

The plaintiff's judgment, in the amount of more than $13,000 against Herb Bilstad and Leola Bilstad was docketed in Washington county on July 10, 1958. At that time the Bilstads and their children occupied the property in question as a homestead. On November 7, 1958, the Bilstads filed for record with the county clerk of Washington county a claim of homestead pursuant to ORS 23.270 (2).②

Sometime prior to August 22, 1959, Mr. Bilstad, having experienced financial reverses, moved to Los Angeles where he sought employment and found it.

On August 20, 1959, Mrs. Bilstad signed a listing agreement with a real estate agent authorizing the sale of their property. On August 21, 1959, she notified Portland General Electric Company that electrical service to the premises should have been discontinued on August 2, and on August 22, she had the water service discontinued.

Mrs. Bilstad had been for seven years an employee of Lerner Shops in Portland in an executive capacity.

---

② "Whenever a judgment is recovered against a homestead owner, he may make and file for record in the proper registry of deeds of the county in which the homestead is situated, a statement executed with the same formality required for the execution of deeds of real property, giving the description and the quantity of land claimed by him as a homestead, an estimate of the value thereof, and his name and postoffice address, with a declaration that he claims the property as his homestead; and the making and filing of such statement shall have the same effect as the giving of the notice above provided for."

The "notice above provided for" is a notice that may be given by the homestead owner whenever a levy is made upon the homestead, the effect of which is to prevent a sale on execution of the premises unless a greater sum than the amount of the exemption is bid. ORS 23.270 (1).

On August 22, 1959, she quit her job, giving as the reason that she was moving to Los Angeles to be with her husband. Peter Van Dyke, manager of Lerner Shops, a witness for plaintiff, testified on cross-examination:

"A Well, as I think back, I know that they had a problem with business. He lost his business, as I remember it, and went down to Los Angeles to find work. I think he found work with a firm doing interior decorating for whom he traveled a great deal out of the Los Angeles area, and he made this his permanent home as far as I know. He took their girl down there with him. She cleaned up their affairs here, which included selling the house, and then went down to be with him. I know this was a big decision for her, because she didn't want to loose [sic] her job with us. She had an executive position and she hated to leave it."

Sometime in August Mrs. Bilstad moved the furniture out of the house and went to California to join her husband and live in an apartment which he had rented.

Under date of September 19, 1959, Mr. and Mrs. Bilstad signed an earnest money receipt for the sale of the Washington county property to the defendants Gray. They gave their address on this document as "501 N. Verdugo Rd., Glendale, California." Under date of October 14, 1959, Mr. and Mrs. Bilstad executed a bargain and sale deed conveying the property to the defendants. The deed was acknowledged by the Bilstads before a notary public for California and was recorded in Washington county, Oregon, on October 22, 1959.

Mrs. Bilstad died of a heart attack at Ashland, Oregon, in December, 1959, while on her way by automobile from Los Angeles to Portland. Mr. Bilstad

was to have joined her, apparently in Portland, but the purpose of the trip is not disclosed. There is no evidence that Mr. Bilstad ever returned to Oregon. It appears that at the time of the trial, in October, 1961, he was living in Chicago. He was not called as a witness by either party, although it is apparent that his address in Chicago was either known to both parties or could have been readily obtained.

C. E. Dickey, the real estate agent who represented the Bilstads in the sale of their property, testified, when asked if he had any knowledge whether Mr. Bilstad had gone to California permanently or "on a temporary deal":

"Well, we usually get the husband and wife to sign the listing agreement, and so Mr. Camplan and I—Mr. Camplan was at that time a salesman of ours, in fact, he wrote the listing and I signed it; but we asked them then about Mr. Bilstad signing the listing. She said he was in California looking for a job, and that he was expected back in the very near future, and at which time he would sign it if we insisted. She said that too before Camplan and myself."

Mr. Glen McCarty, an attorney who had represented the Bilstads, was called as a witness by the defendants and testified that the Bilstads were going to California so that Mr. Bilstad could take a job with an organization known as Robbins Floor Lines; that he was going for the purpose of training and getting himself re-established financially; that Mrs. Bilstad remained behind to sell the house and decided to join her husband because his training period was of longer duration than he had anticipated; that Bilstad was not to have a permanent job in California, but it was "a training situation", and that he later was trans-

ferred to Chicago, "but he'd hoped to come back here but it was a job for him in the line with which he was familiar."

Much of Mr. McCarty's testimony was hearsay, and was duly objected to as such; but, even though it were treated as competent, it does not show the requisite statutory intent.

We quote again that part of ORS 23.240 pertinent to this issue:

"The homestead must be the actual abode of and occupied by the owner, his spouse, parent or child, but such exemption shall not be impaired by temporary removal or absence with the intention to reoccupy the same as a homestead, nor by the sale thereof, but shall extend to the proceeds derived from such sale to an amount not exceeding $7,500, while held, with the intention to procure another homestead therewith, for a period not exceeding one year."

■ Although the homestead statute should be liberally construed in favor of the exemption, courts have no authority to disregard provisions that are plain and unambiguous. The "temporary removal or absence" which will not impair the exemption is one which is accompanied by "the intention to reoccupy the same as a homestead." As the court said in *Blackburn v. Lake Shore Traffic Co.*, 90 Wis 362, 366, 63 NW 289:

"It has been held that the words 'temporary removal,' as here used, mean 'a removal for a fixed and temporary purpose or for a temporary reason;' also, that, 'in order to prevent an abandonment by such removal, it must be made with the certain and abiding intention of returning to the premises and residing thereon as a homestead.' Moore v. Smead, 89 Wis. 558. 'A vague intention to return perhaps at some future day and reside there again, will not

preserve the homestead.' Jarvais v. Moe, 38 Wis. 440.''

There is no evidence in this case that when the Bilstads, with their children, moved to California they intended ever again to make the premises in question their "actual abode" or "to reoccupy the same as a homestead."

■ Notwithstanding some language to the contrary in *DeHaven & Son Hardware Co. v. Schultz,* 122 Or 493, 496, 259 P 778, the rule is that the cessation of occupancy raises a presumption of abandonment which will devolve upon the claimant a duty of overcoming it. *Monte Vista Bank & Trust Co. v. Savage,* 75 Colo 180, 225 P 219; *Jarvais v. Moe,* 38 Wis 440; *Pedersen v. Nielsen,* 212 Wis 608, 250 NW 400; *Shaffer v. Miller,* 195 Iowa 891, 192 NW 868; *Crail v. Jones,* 206 Iowa 761, 221 NW 467; *Harper v. Forbes,* 15 Cal 202; *Stotts v. Stotts,* 198 Mich 605, 165 NW 761; *Kaes v. Gross,* 92 Mo 647, 3 SW 840; *Vittengl v. Vittengl,* 156 Iowa 41, 135 NW 63; *Marshall v. Applegate,* 10 Ky Law Rep 811, 10 SW 805; *Rasmussen v. Rasmussen,* 368 Ill 137, 13 NE2d 166; Waples, Homestead and Exemption, 564; 40 CJS 671-672, Homesteads § 196.

"The intention which is sufficient to rebut the presumption must be positive and certain, not conditional or indefinite." *Jarvais v. Moe,* supra, 38 Wis at 448; or, as this court said in *DeHaven & Son Hardware Co. v. Schultz,* supra, 122 Or at 497, "a constant and abiding intention to return and occupy the same as a home."

And "when such intent ceases, the abandonment becomes complete." *Crail v. Jones,* supra, 206 Iowa at 764.

■ The defendants did not sustain the burden resting upon them. The most that can be said for the evidence is that it shows an intention to return to Oregon at some time in the future. Even this was not a "fixed and abiding" intention. Mr. McCarty testified that Mr. Bilstad "hoped to come back here." It may be said that he desired to return to Oregon, but that his intention to do so was conditional upon the circumstances which might develop in his new field and the endeavor to rehabilitate himself financially. See *Peterson v. Wasserman,* 246 F 88, 89 (7th Cir. 1917).

It is suggested, however, that in view of the provision that the sale of a homestead does not impair the exemption, but that it "shall extend to the proceeds derived from such sale * * * while held, with the intention to procure another homestead therewith, for a period not exceeding one year", it would be unreasonable to construe the statute in such a manner as to deprive the owner of the benefit of the exemption simply because he had removed from the premises before making the sale if he intended to reinvest the proceeds in another homestead. This presents a question of some difficulty, for certainly the property must not have lost its character as a homestead at the time of its sale if the exemption is to be sustained. *Peterson v. Wasserman,* supra. And if the owner removes from the property with a fixed purpose to sell it or manifests that purpose afterwards by, for example, entering into a contract of sale of the property, in strict logic it cannot be said that there is a temporary removal accompanied by an intention to reoccupy the property as a homestead. In *Vittengl v. Vittengl,* supra, the Iowa court came to the aid of the homestead owner by giving effect to an intention to purchase a new homestead with the proceeds of the sale

of the old if her contemplated sale were finally consummated. The sale did not go through. Without expressing an opinion as to the soundness of this decision, it should suffice to point out that the *Vittengl* case was not a contest between a purchaser and a creditor, that in the present case the sale was actually made and that there is no evidence whatever that the Bilstads intended to invest the proceeds of the sale in a new homestead or, for that matter, as to what they actually did with the money. And it may be observed in passing that, if the rights of the purchasers are to be made to depend upon the existence of the requisite intention of the sellers to invest the proceeds of a sale in another homestead, it would be highly unreasonable to hold that a creditor has the burden of proving a negative in that regard. *Crail v. Jones,* supra; *Smith v. Hart,* 49 SD 582, 207 NW 657, 46 ALR 811; *Orange Brevard Plumbing & Heating Co. v. La-Croix* (Fla) 137 S2d 201. As the court said in the case last cited:

> "After a full consideration of the applicable authorities representing both views on the issue before us, and in recognition of the liberal interpretation of the homestead exemption to which this court is committed, we hold the proceeds of a voluntary sale of a homestead to be exempt from the claims of creditors just as the homestead itself is exempt if, and only if, the vendor shows, by a preponderance of the evidence an abiding good faith intention prior to and at the time of the sale of the homestead to reinvest the proceeds thereof in another homestead within a reasonable time." 137 S2d at 206.

This case more nearly resembles *Conway v. Nichols et al,* 106 Iowa 358, 76 NW 681, where the homestead was sold by the nonoccupying owner who testified

that he intended to go back to the farm if he did not sell it, but he did sell it and never occupied it again and the court held that there had been an abandonment. But this is a stronger case for abandonment than *Conway v. Nichols,* as there is no evidence here of even a contingent intention of the owners to reoccupy the premises.

*DeHaven & Son Hardware Co. v. Schultz,* supra, cited by the defendants, holds that the evidence of the homestead owner and his witnesses sufficiently showed that his removal from the homestead was temporary, notwithstanding the fact that he had offered the property for sale. "Indeed," the court said, "under the statute, he could have actually sold the property and kept the proceeds exempt for a period of one year if it was his intention to invest the same in a home." 122 Or at 497. This is true, of course, where there has been no abandonment and the court could have meant nothing more. The dictum does, however, lend support to the view that it is not necessary for the owner of a homestead to be occupying it as his place of abode at the time he sells it in order to preserve his right to the exemption. Other Oregon cases cited by the defendants on the question of abandonment contain nothing inconsistent with our holding and need not be specifically discussed. *Sterrett v. Hurlburt et al,* 129 Or 520, 275 P 689, 278 P 986; *Watson v. Hurlburt,* 87 Or 297, 170 P 541.

■ We hold that the Bilstads' removal constituted an abandonment of the homestead and that the lien of the plaintiff's judgment attached before the sale to the defendants.

The decree is affirmed. No costs or disbursements will be allowed.

O'CONNELL, J., dissenting.

I concur in that part of the opinion which overrules *Bush v. Shepherd, Adm'r.*, 186 Or 105, 205 P2d 842 (1949). I do not agree with the conclusion that there was an "abandonment" in this case.

ORS 23.240 expressly provides that the homestead exemption "shall not be impaired * * * by the sale" of the homestead. The majority opinion construes this provision to mean that the exemption is preserved only when the sale is made by the owner while still in occupancy or when the owner has entered into a contract of sale intending, however, to return if the contract is not finally performed by the vendee. That is a very narrow construction of the statute. It must be remembered that the homestead exemption statute never comes into operation until the owner is pressed with a judgment and he asserts his claim to the exemption. The statute was intended to give the home owner, at that point, a means of protecting enough of his assets from the judgment lien to enable him to have a roof over his head. The legislature did not say that the roof had to be the one which the claimant had at the time he asserted his exemption. On the contrary, the statute permits him to sell without impairing the exemption.[1] But the majority opinion takes the position that the exemption is lost unless the claimant is either an actual or contingent occupant at the time of the sale.

---

[1] The inquiry in this type of case should not be whether the owner abandoned his homestead, but rather whether he relinquished his right. The statute permits a sale without impairing the exemption. This contemplates the "abandonment" of the homestead because, normally, one who sells property has no intent to return to it.

Assuming that the owner wishes to make an outright sale of his property, that is, not under a land sale contract, what legislative policy relevant to the purposes of the homestead exemption would require the consummation of the sale before the owner leaves the premises? The owner who sells while in occupancy has one year in which to invest the proceeds (up to the amount of the exemption) in another homestead unless the judgment creditor can prove that sometime within that period the claimant ceased to have the intention to procure another homestead with such proceeds. Since the legislature saw fit to let the claimant leave the premises after making the sale, it certainly cannot be said that occupancy by the owner was of any significance to the legislature in preserving the exemption to owners who wish to sell. To insist upon the occupancy of the owner at the time of the sale would, as the court in *Vittengl v. Vittengl,* 156 Iowa 41, 135 NW 63 (1912) described it, "reduce the law to somewhat of an absurdity at this point." It is just as absurd to insist upon a contingent intent to return where the sale is made under the circumstances found in the *Vittengl* case.

I would construe ORS 23.240 to mean that the exemption is not impaired where the owner leaves the homestead with the intent to sell it and invest the proceeds in another homestead. The exemption would continue to remain unimpaired until the owner evidences an intent to relinquish his homestead right through words or conduct. The burden of proving that the owner has relinquished his homestead right should rest upon the judgment creditor. That is the conclusion reached in *DeHaven & Son Hardware Co. v. Schultz,* 122 Or 493, 496, 259 P 778 (1927) and a sub-

stantial number of cases in other states.[2] In the *De-Haven* case the court said:

> "* * * After the existence of a homestead has been established, as has been done in the instant case, it is incumbent upon the judgment creditor, if it is sought to subject the property to execution, to establish by clear and convincing proof that there has been a relinquishment of the homestead right. A condition once shown to exist is presumed to continue and he who would assert a change in the nature or character of the estate has the burden of proof: 29 C.J. 961. There are authorities to the contrary but the above rule meets with our approval: *American State Bank v. LeForce,* 95 Okl. 88 (218 Pac. 1073) ; 13 R.C.L. 694."

The majority opinion rejects this view and adopts the "rule" that "cessation of occupancy raises a presumption of abandonment." No explanation is offered for rejecting the rule in the *DeHaven* case and thus shifting the burden of proof from the judgment creditor to the claimant of the homestead right. I believe that the retention of the rule in the *DeHaven* case permits a more reasonable construction of the sale provision of the homestead statute. If the burden of negating abandonment is placed upon the homestead claimant or purchaser, the statute is practically inoperative where the owner wishes to sell the homestead. Normally, the purchaser will deduct the full amount of the judgment because he will not wish to gamble on whether proof can be adduced negating an

---

[2] E. G., Petition of Lehman v. Cottrell, 298 Ill App 434, 19 NE2d 111 (1939); First National Bank of Crowley v. Brooks, 164 La 297, 113 So 853 (1927); Gordon v. Emerson-Brantingham Imp. Co., 168 Minn 336, 210 NW 87 (1926); Jackson v. Coleman, 115 Miss 535, 76 So 545 (1917); American State Bank v. Leforce, 95 Okla 88, 218 P 1073 (1923); Bell v. Franklin, 230 SW 181 (Tex Civ App 1921); Jones v. Kepford, 17 Wyo 468, 100 P 923 (1909).

abandonment. Thus the owner is not substantially better off under the rule adopted by the majority than he would be under *Bush v. Shepherd,* supra.[3]

If the burden of proof is placed upon the judgment creditor to establish the relinquishment of the homestead right, the owner will usually have a better chance of inducing the purchaser to make the purchase on the basis of an existing exemption right. Neither solution is satisfactory but one of the two constructions of the statute must be adopted and I believe that the position I have taken is preferable. The sale provision of ORS 23.240 is in need of revision. If the legislature wishes to allow the exemption in those cases where the owner sells the homestead, it would seem that the only satisfactory solution is to preserve the exemption for a specified period irrespective of the owner's intention upon ceasing to occupy the homestead. This is the solution attempted in at least one state.[4]

In the present case the intention to sell the property was evidenced by the fact that Mrs. Bilstad signed

---

[3] Cf., Lacy, Homestead Exemption–Oregon Law: A Postscript, 34 Or L Rev 1 at p. 14 (1954).

[4] The Minnesota homestead exemption statute contains the following provision:

"The owner may sell and convey the homestead without subjecting it, or the proceeds of such sale for the period of one year after sale, to any judgment or debt from which it was exempt in his hands. He may remove therefrom without affecting such exemption, if he do not thereby abandon the same as his place of abode. If he shall cease to occupy such homestead for more than six consecutive months he shall be deemed to have abandoned the same unless, within such period, he shall file with the register of deeds of the county in which it is situated a notice, executed, witnessed, and acknowledged as in the case of a deed, describing the premises and claiming the same as his homestead. In no case shall the exemption continue more than five years after such filing, unless during some part of the term the premises shall have been occupied as the actual dwelling place of the debtor or his family." 29 Minn Stat Ann, § 510.07 (1947).

a listing agreement while occupying the premises. There was no evidence that defendants did not intend to use the proceeds of the sale for the purchase of another homestead. Therefore, plaintiff has not overcome the presumption of the continuance of the homestead exemption.

The judgment should be reversed and judgment entered for defendants.

SLOAN and GOODWIN, JJ., concur in this dissent.