[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-16487
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 8, 2011
JOHN LEY
CLERK

D. C. Docket No. 09-20288-CR-FAM

UNITED STATES OF AMERICA,

                                                              Plaintiff-Appellee,

                              versus

FERNANDO BENNER,

                                                              Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 8, 2011)

Before EDMONDSON and MARCUS, Circuit Judges, and FAWSETT,[*] District
Judge.

_____

[*]Honorable Patricia C. Fawsett, United States District Judge for the Middle District of
Florida, sitting by designation.

PER CURIAM:

Fernando Benner was charged by indictment with conspiracy to commit an offense against the United States in violation of 18 U.S.C. § 371 and bribery of a bank official in violation of 18 U.S.C. §§ 215(a)(1) and 2. Following a jury trial, Benner was convicted on both counts and sentenced to imprisonment for a total of 63 months. Benner challenges his convictions and sentence on a variety of grounds. For the reasons set forth below, we find no error in the trial court proceedings and affirm Benner's conviction and sentence.

## I. Facts

In February 2009, Benner was approached by Andres Parra, an indicted co-conspirator, who asked Benner if he had a contact at Bank of America who could help unfreeze two accounts at that bank. Benner told Parra that one of his business contacts, Adriana Benitez Cruz, had a contact at Bank of America.

Benner then contacted Cruz and asked if she had any contacts at Bank of America who could assist in unfreezing the accounts. Cruz had been arrested in December 2008 on unrelated bank fraud charges. Although Cruz did not inform Benner that she had been arrested, Benner testified that Maria Alejandra Santin, a co-worker, told him in January of 2009 that Cruz was working for the FBI.

After Benner's initial call to Cruz, he frequently called and texted Cruz to

2

ask when a meeting with a Bank of America employee could be arranged. At some point Benner told Cruz that there would be a commission for her and for the bank in unfreezing the accounts. On March 11, 2009, Cruz decided to cooperate with the FBI in her own bank fraud case, and she also told the FBI about Benner's proposal. On March 17, 2009, at the FBI's direction, Cruz informed Benner that a Bank of America employee named Liz Diaz would unfreeze the accounts in exchange for three to five thousand dollars. Diaz was actually undercover FBI Special Agent Liz Santamaria.

Benner then contacted Parra and instructed him to meet Diaz at the Bank of America branch and time provided by Cruz, and Benner informed Cruz that Parra would meet, "give a little bit of money," and exchange envelopes with Diaz. Benner admitted in his post-arrest statement that he told Parra on the date the bribe was consummated to take $2,000 to the bank. Parra ultimately gave Diaz $2,000 at the designated Bank of America branch in exchange for four cashier's checks representing the money in the two frozen accounts which totaled $681,502.

## II. Law & Analysis

### A. Challenges to Crimes of Conviction

Benner asserts that his bribery conviction under 18 U.S.C. § 215(a)(1) is void for vagueness because people of ordinary intelligence must guess whether any

3

offer to a bank officer is prohibited. A conviction under § 215(a)(1) requires proof of "corrupt[] . . . intent to influence or reward," and the element of corrupt intent "does much to destroy any force in the argument that application of the [statute] would be so unfair that it must be held invalid, especially with regard to the adequacy of notice to the complainant that his conduct is proscribed." United States v. Awan, 966 F.2d 1415, 1424 (11th Cir. 1992) (quotation omitted); see also Vill. of Hoffman Estates v. Flipside, 455 U.S. 489, 499, 102 S. Ct. 1186, 1193 (1982) ("[A] scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed.").

Benner further argues that his offense conduct, bribing a bank officer to unfreeze a bank account, is not prohibited by 18 U.S.C. § 215(a)(1) because it did not involve a loan or the procurement of a loan. To the contrary, the plain language of § 215(a)(1) prohibits bribery "in connection with any business or transaction of [a financial] institution," not merely bribery regarding loans. Although the title of 18 U.S.C. § 215, which originally stated in 1948 "Receipt of commissions or gifts for procuring loans," was retained when the statute was substantially broadened in 1984,[1] the retention of the original title has no legal

---

[1] See Pub. L. No. 98-473, §1107, 98 Stat. 1837, 2145-46 (1984).

4

significance absent any ambiguity in the body of the statute. See United States v. Or. & C. R. Co., 164 U.S. 526, 541, 17 S. Ct. 165, 170 (1896) ("The title is no part of an act, and cannot enlarge or confer powers, or control the words of the act unless they are doubtful or ambiguous. The ambiguity must be in the context, and not in the title, to render the latter of any avail." (internal citations omitted)). Because § 215(a)(1) is not ambiguous, its title does not limit the conduct criminalized by the body of the statute which plainly includes the bribe for which Benner was convicted.

Benner's reliance on the canon of strict construction of criminal statutes, also known as the rule of lenity, in cabining § 215(a)(1) to bribes involving loans is also without merit. The rule of lenity is invoked only if there is a "grievous ambiguity or uncertainty in the statute." Muscarello v. United States, 524 U.S. 125, 139, 118 S. Ct. 1911, 1919 (1998) (quotation omitted). Because there is no ambiguity in the terms of § 215(a)(1), the rule of lenity is inapplicable here.

Benner next claims that his convictions for conspiracy under 18 U.S.C. § 371 and bribery of a bank officer in violation of 18 U.S.C. § 215(a)(1) on a theory of aiding and abetting are multiplicitous in violation of the Fifth Amendment's Double Jeopardy Clause. The Double Jeopardy Clause is not offended where each count of conviction "requires proof of an additional fact which the other does not."

5

Blockburger v. United States, 284 U.S. 299, 304, 52 S. Ct. 180, 182 (1932) (quotation omitted).

Benner's conviction for conspiracy in violation of 18 U.S.C. § 371 required proof of an agreement, whereas the bribery conviction under 18 U.S.C. § 215(a)(1) based on a theory of aiding and abetting did not. See United States v. Toler, 144 F.3d 1423, 1426 n.4 (11th Cir. 1998). In addition, the bribery conviction under 18 U.S.C. § 215(a)(1) required proof of a gift, offer, or promise to give anything of value to a bank officer or employee, which is not required for a conspiracy conviction under 18 U.S.C. § 371. See United States v. Hasson, 333 F.3d 1264, 1270 (11th Cir. 2003). Because each count of conviction required "proof of an additional fact which the other d[id] not," Blockburger, 284 U.S. at 304, 52 S. Ct. at 182 (quotation omitted), there was no violation of the Double Jeopardy Clause for multiplicitous offenses. For the same reason, we reject Benner's assertion that the charged offenses prejudicially suggested to the jury that he committed several crimes instead of only one. Cf. United States v. Smith, 231 F.3d 800, 815 (11th Cir. 2000) ("[A] multiplicitous indictment may improperly prejudice a jury by suggesting that a defendant has committed several crimes-not one." (quotation omitted)).

Accordingly, Benner's challenges to the validity of the charges against him

6

are without merit.

## B. Challenges to Trial Proceedings

Benner asserts that his constitutional right to present a full and complete defense[2] was violated when the trial court excluded the proffered testimony of Maria Alejandra Santin that she told Benner in January 2009 that Cruz was working for the FBI. Benner sought to introduce Santin's statement to show that he did not believe that he was doing anything illegal and thus lacked the necessary *mens rea* to be guilty of bribery. See 18 U.S.C. § 215(a)(1). Because Benner did not raise this constitutional claim below, we review it for plain error. United States v. Candelario, 240 F.3d 1300, 1306 (11th Cir. 2001). To establish plain error, Benner must show (1) an error, (2) that is plain, (3) that affected his substantial rights, and (4) that seriously affected the fairness of the judicial proceedings. United States v. Rodriguez, 627 F.3d 1372, 1380 (11th Cir. 2010) (citation omitted).

The exclusion of Santin's testimony did not violate Benner's constitutional right to present a defense, let alone amount to plain error. Benner argued at trial that Santin's proposed testimony was admissible to show the effect of her

---

[2] A defendant's right to call witnesses and present evidence in his favor is secured by both the text of the Sixth Amendment and the Fifth Amendment Due Process Clause. United States v. Hurn, 368 F.3d 1359, 1362 (11th Cir. 2004).

statement on Benner's state of mind. On appeal Benner contends that Santin's testimony was necessary to corroborate Benner's testimony about Santin's statement and cites United States v. Eisenstein, 731 F.2d 1540 (11th Cir. 1984), in support of this argument.

In Eisenstein, the defendants asserted the defense of good faith reliance on advice of counsel after full disclosure of all relevant facts. Id. at 1543. In support of this defense, defendants sought to elicit the testimony of counsel. Id. at 1544-45. After one defendant testified concerning what he told the lawyer, the testimony of counsel as to what he had been told in order to render advice was erroneously excluded on the ground of hearsay. Id. This error was not harmless because it was "necessarily relevant" to the advice of counsel defense for the attorney to tell the jury the facts disclosed by the defendants upon which he gave his advice. Id. at 1546 (emphasis omitted). Further, counsel in Eisenstein was asked to testify to objective facts, not as to the state of mind of a defendant. Id. at 1544-45.

Unlike the defendants in Eisenstein, Benner did not rely on an advice of counsel defense. Instead Benner contended that he did not have the *mens rea* to commit the crime for several reasons, one of which was the effect Santin's statement had on his state of mind. However, Santin was not shown to be

8

competent to testify to Benner's state of mind. The effect of Santin's statement on Benner's state of mind was a matter solely within the knowledge of Benner. Benner described to the jury at trial, without objection, Santin's statement to him, when it was made, and its effect upon him.[3] Thus Santin's excluded testimony was merely cumulative to Benner's undisputed testimony regarding Santin's statement, and the exclusion of Santin's proposed testimony did not violate Benner's constitutional right to present a *mens rea* defense. See United States v. Thomas, 62 F.3d 1332, 1342 (11th Cir. 1995) (finding that cumulative testimony was properly excluded); United States v. Wuagneux, 683 F.2d 1343, 1355 (11th Cir. 1982) (noting that the exclusion of a defense witness does not violate due process where the proposed testimony would be cumulative or irrelevant (citations omitted)).

Even assuming that Santin's testimony was improperly excluded, the resulting prejudice to Benner did not amount to plain error. The government presented overwhelming evidence that Benner acted with corrupt intent, including: (1) Benner's post-arrest admissions that he participated in the scheme to unfreeze the accounts, that he would receive between $5,000 and $6,000 for unfreezing the accounts, and that the Bank of America employee would receive 5% of the

---

[3] Benner testified that in January of 2009, Santin told him that Cruz was working for the FBI. Benner further stated that he thought Cruz "could only be doing good things" and could not "get involved in something illegal or any wrongdoing" if Cruz was working for the FBI.

9

proceeds for unfreezing the accounts; (2) the overall clandestine and irregular nature of the scheme; (3) Benner's text messages and trial testimony suggesting that he knew that the Bank of America employee was to receive money for unfreezing the bank accounts; (4) Benner's education, intelligence, and experience in the mortgage industry; (5) Benner's testimony that according to Parra, Bank of America would receive a 5% commission for releasing the frozen funds; (6) Benner's testimony that he told Cruz that there would be a commission for her and for the bank in unfreezing the accounts; and (7) the surveillance video and transcript showing that Parra gave Special Agent Santamaria $2,000 in exchange for the proceeds of the frozen bank accounts. In light of this evidence, the exclusion of Santin's testimony did not affect Benner's substantial rights.

Benner also maintains that the jury instruction on aiding and abetting was erroneous because it failed to specify that the jury must find that a person besides the defendant actually committed the substantive offense. The aiding and abetting jury instruction at issue adequately embodies the well-settled principle that one cannot aid or abet himself, United States v. Martin, 747 F.2d 1404, 1407 (11th Cir. 1984), and it is virtually identical to the aiding and abetting instruction sustained in United States v. Broadwell, 870 F.2d 594, 607 n.32 (11th Cir. 1989). Accordingly, we reject Benner's assignment of error to the aiding and abetting jury instruction

10

used in his case.

## C. Sentencing Issues

Benner contends that no evidence showed that the amount of the bribe exceeded $1,000, absent which he could not have been sentenced to more than one year imprisonment for violating 18 U.S.C. § 215(a). To the contrary, Benner admitted in his post-arrest statement that he told Parra on the morning of March 19, 2009, to take $2,000 to Liz Diaz that afternoon. In addition, the surveillance video of Parra consummating the bribe later that day showed Parra handing a total of $2,000 to undercover FBI Special Agent Santamaria. We therefore reject Benner's challenge to the sufficiency of the evidence on this element. See United States v. Williams, 144 F.3d 1397, 1401-02 (11th Cir. 1998).

Benner next argues that the Court erred in enhancing his sentence under U.S.S.G. § 2B4.1 based on the total amount in the frozen bank accounts as opposed to the amount of the bribe. Pursuant to U.S.S.G. § 2B4.1, a graduated enhancement is applied based on "the greater of the value of the bribe or the improper benefit to be conferred." "The 'value of the improper benefit to be conferred' refers to the value of the action to be taken or effected in return for the bribe." U.S.S.G. § 2B4.1 cmt. n.2.

Regardless of who owned the funds and whether they were lawfully

11

accumulated in the bank accounts, it is undisputed that the accounts were administratively frozen by Bank of America and that the bribe afforded access to frozen funds totaling $681,502. Plainly, then, the value of the action to be taken in return for the bribe was $681,502. In addition, the benefit of the bribe attributable to Benner for sentencing purposes is not limited to Benner's intended personal monetary gain. See United States v. DeVegter, 439 F.3d 1299, 1304 n.2 (11th Cir. 2006) (holding that the value of the improper benefit conferred by the defendant's bribe to a county official was the benefit to the defendant's company for obtaining a county contract as a result of the bribe, not merely the benefit directly inuring to the defendant from the bribe). Thus, we uphold the 14-level enhancement under U.S.S.G. § 2B1.1(b)(1)(H) based on $681,502 as the value of the improper benefit conferred.

Benner also contends that his sentence was improperly enhanced for obstruction of justice under U.S.S.G. § 3C1.1 due to untruthful testimony at trial. We review the application of this sentencing enhancement for clear error, according "great deference to the district court's credibility determinations." United States v. Singh, 291 F.3d 756, 763 (11th Cir. 2002) (quotation omitted).

A two-level enhancement may be applied under U.S.S.G. § 3C1.1 if a defendant commits, suborns, or attempts to suborn perjury. U.S.S.G. § 3C1.1 cmt.

n.4(B).  Perjury, for purposes of applying this enhancement, is the giving of "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory."  United States v. Dunnigan, 507 U.S. 87, 94, 113 S. Ct. 1111, 1116 (1993).  In applying the obstruction of justice enhancement, the district court noted Benner's false testimony both at trial and sentencing that he was not fully aware of what he was doing and his untruthful testimony at trial that he "did not think there was anything wrong."  The district court also credited the collection of lies contained in Benner's testimony at trial outlined in the Government's Response to Benner's Objections to the Presentence Report.  Benner does not identify, and we do not find after a full review of the record, any evidence suggesting that the trial court clearly erred in finding that Benner testified untruthfully on material matters.

In addition, we reject Benner's assertion that the obstruction of justice enhancement was applied in violation of the "two-witness rule," which requires that the falsity of a defendant's testimony be proved by the testimony of two witnesses or one witness corroborated by independent evidence.  United States v. Forrest, 623 F.2d 1107, 1110 (5th Cir. 1980) (internal quotation omitted).[4]  Where,

---

[4] The Eleventh Circuit Court of Appeals adopted as binding precedent all prior decisions of the former Fifth Circuit Court of Appeals issued prior to October 1, 1981.  Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

as here, "the objective falsity of [the] defendant's statement depends upon [the] defendant's subjective state of mind and therefore is incapable of direct proof," the two-witness rule does not apply. Id. at 1111. Therefore, Benner's reliance on the two-witness rule is misplaced.

Because the obstruction of justice enhancement under U.S.S.G. § 3C1.1 was lawfully applied, we reject Benner's argument that the enhancement contravened his privilege to testify at trial. See Dunnigan, 507 U.S. at 98, 113 S. Ct. at 1119. Benner's constitutional right to testify in his own defense does not extent to testifying falsely. Nix v. Whiteside, 475 U.S. 157, 173, 106 S. Ct. 988, 997 (1986).

Finally, Benner contends that the trial court provided an inadequate explanation of the chosen sentence and improperly weighed the factors under 18 U.S.C. § 3553(a). Upon a review of the record and consideration of the parties' briefs, we conclude that Benner's sentence was both procedurally and substantively reasonable, as the district court adequately explained the sentence imposed, and the guideline sentence fashioned by the court achieved the purposes of sentencing as stated in § 3553(a). Accordingly, we affirm Benner's sentence.[5]

---

[5] Any issue asserted by Benner which is not specifically addressed in this opinion is found to be without merit.

### III. Conclusion

No error having been found, Benner's convictions and sentence are **AFFIRMED**.